# CHARLESTON.

## TENNANT *et al v.* TENNANT *et al.*

Submitted September 1, 1909.   Decided March 14, 1911.

1. COVENANTS—*Construction and Operation—Covenants Running with Land.*

    In order that a covenant may run with the land, it must respect the thing granted, and the act covenanted must concern the estate conveyed.   (p. 33).

2. SAME.

    Heirs, by sealed writing duly acknowledged and recorded, agree that certain ones of their number shall take title, respectively, to the ancestor's various tracts of land and pay for the same, so that the proceeds may be equally divided among the heirs; but that the combined oil rentals and royalties arising from all the lands shall be the property of all the heirs jointly for twenty years; *Held:*

    The right to a share of the rentals and royalties does not arise as an incident to the ownership of a tract vested by the agreement;

    The agreement severs the rentals and royalties in title from the land so that they in no wise respect or concern the grant of the land made by the agreement; and, therefore,

    No covenant in relation to a share of the rentals and royalties runs with any part of the land.   (p. 34).

    (BRANNON, JUDGE, absent.)

Appeal from Circuit Court, Monongalia County.

Bill by Sarah E. Tennant and others against Lucretia Tennant and others. Decree of dismissal and plaintiffs appeal.

*Affirmed.*

*Cox & Baker,* for appellants.

*Lazelle & Stewart,* for appellees.

ROBINSON, JUDGE:

Eugenus Tennant died testate, but questions arose among his heirs at law relative to the will. These heirs were two sons, a daughter and three grandchildren who were the children of a deceased daughter. They entered into a sealed agreement, which was duly acknowledged and recorded. By that agreement they made a disposition of the testator's real estate to suit themselves. They were all adults and fully competent to do so. The parts of the agreement which concern us are as follows:

"And whereas some questions has arisen as to the provisions, intent and meaning of the said Eugenus Tennant's will and his three children and three grand-children above mentioned being desirous of disposing of said testator's real estate equally share and share alike have entered into this agreement which when duly acknowledged and recorded shall take the place of and be in lieu of said will as far as said real estate hereinafter mentioned is concerned.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

"Witnesseth, That Elmer Tennant shall take, hold and possess the Home Farm containing one hundred and ten acres (110) and also a part of the Walter Tennant land containing about eighteen and one-half acres (18 1-2) recently bought of D. S. Keck by the said decedent, the said land to be bounded by the following lines, beginning at the North west side of the Walter Tennant land and running a straight line, to a hickory tree corner to the Liab Tennant land, with the understanding that the said tracts are to be valued by four competent men, said men to be chosen by the heirs, and in case the said four men fail to agree said four men shall choose a fifth and the value put upon said land by parties or appraisers is to be final and said amount to be divided into four parts as the interests of the said children and heirs-at-law appear.

"The said Lucretia Tennant shall take, hold and possess the balance of the Home Place or Farm containing Ninety Four

and seven-eights (94 7-8) acres more or less running with the line of the land above described laid off to Elmer Tennant, with the understanding that the said tract is to be valued as in the case of the tracts laid off to the said Elmer Tennant and with the same conditions and stiplations.

"That said Enos Tennant shall take hold and possess the farm on which he now resides known as the 'Yellow Ben Wilson Farm' bought of James Neely and wife by the said decedent, containing one hundred and five acres (105) more or less and it is further understood that the twenty-eight and one-half acre tract that was devised to the said Enos Tennant by the will of his mother Casandra shall also—valued and appraised and charged to the said Enos Tenant by the appraisers and accounted for as the other tract with the exception of the grain and grass now growing on the said Twenty-eight and one-half acre tract.

"It is further expressly understood that the Pittsburg Coal under the one hundred and ten tract and the eighteen and one-half acre tract allotted to the said Elmer Tennant and under the ninety-four and seven-eighths acre tract allotted to the said Lucretia Tennant shall be reserved to the parties of the first and second parties respectively together with the usual mining rights and privileges in the proportion of their interest.

"It is further understood and agreed between the parties that the proceeds of the oil produced and sold for twenty (20) years and the rentals on the one hundred and ten acre tract and the eighteen and one-half acre tract allotted to the said Elmer Tennant and from the ninety-four and seven-eighths acres tract allotted to Lucretia Tenant and from the one hundred and five acre tract and from the twenty-eight and one-half acre tract allotted to Enos Tennant shall be divided into four equal parts as the interests of the children and heirs at law appear.

"It is mutually understood that the appraisement of the lands by the appraisers chosen shall be final and that the amount so appraised shall be divided into four parts and shall be paid to the parties aforesaid as their interest may appear, to-wit: one-fourth (1-4) shall be paid to Elmer Tennant, one-fourth (1-4) shall be paid to Lucretia Tennant, one-fourth (1-4) shall be paid to Enos Tennant, and one-fourth (1-4) shall be paid to the three children and heirs at law of Louisa Tennant deceased, to-wit: Laura Gardner, Beulah Jones and Viola Eddy.

"It is further understood and agreed that the parties hereto agree to make mutual deeds of release and that vendors liens shall be retained in the deeds for the respective amounts due the parties providing the same is not paid in cash on the delivery of the said deeds."

The 110 acres of land, one of the tracts taken under the agreement by Elmer Tennant, and the 94 7-8 acres, taken by Lucretia Tennant, were under lease for oil and gas at the time of the death of Eugenius Tennant. On the last named track, several producing oil wells have been drilled.

Elmer Tennant died soon after the execution of the agreement which we have set forth. He devised all his property to his wife, Anna Jane. In fulfillment of the agreement, the two tracts of land which were given him by it were conveyed to her by those who joined with him in that agreement. The deed, following a reservation of the coal, contains this clause: "There is also expressly reserved from the operation of this conveyance all the right, title, interest and claim of the Grantors in and to all the oil produced and sold from said two tracts of land within the twenty years next succeeding the 22nd day of July, 1901, and in and to all rentals or royalties paid thereon during the period above mentioned, that is up until the 22nd day of July, 1921, and on and after the said 22nd day of July, 1921, all the oil in and under said land or produced therefrom, and all rentals or royalties derived from the same are to vest absolutely in the said Anna J. Wright, her heirs or assigns."

Anna Jane Tennant subsequently married Elza Wright. She and her husband conveyed the two tracts of land to the plaintiffs in this suit. She made no express reservation of the oil rentals and royalties. Her deed to the plaintiffs sets forth: "The first parties reserve the Pittsburg Vein of coal and mining rights it being now sold; this deed conveys and fulfills the article between these parties the first parties conveys all *there* right, title and interest now owned by them with general warranty."

By this suit the plaintiffs seek an accounting and partition in reference to the rentals and royalties of oil in all the lands that were dealt with by the agreement made to take the place of the will of Eugenus Tennant. A demurrer to their bill was sustained; and, upon their declining to amend, the bill was

dismissed. · They insist that this action of the court was errone-
ous and have appealed. ·

Let us rely on the brief of counsel for appellants for the limits
to which we need direct consideration. It says: "The single and
sole question in this cause is, did the plaintiffs take the one-
fourth interest in the royalty oil and rentals or in the proceeds
thereof which was allotted to Elmer Tennant by the agreement
of compromise and partition of the lands of which Engenius
Tennant died siezed and of which Casandra Tennant, his wife,
died siezed by reason of the deed from Anna J. Wright and
husband? We maintain that the plaintiffs did take said one-
fourth interest, because:

(1) Such one-fourth interest is a rent, issue, income, profit
and incident. to the ownership of the oil in place under the
lands conveyed to the plaintiffs by the deed from Anna J. Wright
and husband.

·(2) The covenant of the agreement of compromise and par-
tition providing that the proceeds of the oil for twenty years
and the rentals should be divided into four equal parts as the
interests of the children and heirs at law appear, is a covenant
running with the land allotted to Elmer Tennant and devised ·
by him to his widow, now Anna J. Wright, and conveyed by
her and husband to the plaintiffs."

We cannot sustain the contention of the appellants that they,
by the deed of Anna J. Wright to them, became the owners of
a one-fourth interest in the oil rentals and royalties arising
from all the lands. A true view of the agreement between the
parties, whereby Elmer Tennant became vested with title to
the land which plaintiffs now own, does not justify such claim.
By that agreement Elmer Tennant did not get a right to the
oil rentals and royalties because of his taking ownership of
land thereunder. The agreement does not contain a covenant in
regard to the rentals and royalties, which runs ·with title to the
land. It does that which is far from a covenant running with
title. It virtually separates the title to the oil from the title to
the land for a period of twenty years. That intention of the
parties is clearly manifested by the agreement · and the deed
made in pursuance thereof. That agreement disposes of the
ownership of the lands; then it disposes of the ,oil to be pro-
duced therefrom. It clearly reserves from the grants of the

lands the oil underlying them, else it could not have provided as it did for a disposition of the produce of the oil. Let us note clearly that the right to the oil for twenty years was not given simply to those who were given land. Some took land, but all took the oil jointly. Parties who took no land took interest in the oil as well as those who did take land. So the oil was separated from title to the lands and considered in ownership as absolutely distinct from the ownership of land. The mere taking of land gave no right to oil. The oil was reserved jointly to all by contract, regardless of any title given to some portion of the lands. And since it was reserved to all by the very force of the agreement, it could not enter into any allotment of land, or be an incident to the title thereto. It could not become an incident to the ownership of a tract of the land so as to attach to the title thereto. The arrangement was so made that the combined rentals and royalties arising from the several tracts were in no wise incident to the ownership of any particular tract.

That the land and the oil were dealt with so separately as to have no connection with each other in title, is also shown by the fact that the prices of the tracts were of course fixed by the arbitrators without respect to the production of oil for twenty years. Those who took land were made to pay for it only as land without oil for the period named. They were charged for the land as land from which the oil was severed in title. For, clearly, the true purport of the agreement is that Elmer, Lucretia and Enos Tennant were granted title to their respective tracts of land, with the title to the oil thereunder reserved. And the title to all that oil by another clause of the same agreement is made to vest jointly in all the parties. Thus Elmer Tennant was granted the two tracts of land which it was agreed he should buy, with the oil thereunder reserved, and that oil, merged with the oil under the other tracts, was then vested for twenty years jointly in Elmer and all the other parties.

"In order that a covenant may run with the land, that is, that its benefit or obligation may pass with the ownership, it must respect the thing granted or demised, and the act covenanted to be done or omitted must concern the land or estate conveyed." 11 Cyc. 1080. This concise statement is established by the older books and the well adjudged cases. Note that the covenant "must respect the thing granted or demised." The

thing granted to Elmer Tennant, as we have said, was the land with the oil reserved. Then does the covenant to take oil respect the land which was granted him without that oil? The oil was no part of the grant of the land to him. Oil cannot respect that which was granted to him in the nature of land, for the same was plainly reserved from it. And especially is this true as to the oil under the other tracts. Then note that "the act covenanted to be done or omitted must concern the land or estate conveyed." Here no act was covenanted to be done in relation to the land without the oil, which was the estate conveyed to Elmer Tennant. That which appellants insist is a covenant is in reality a separate estate in the oil. It is wholly dissevered from the land granted and cannot concern it.

Then, an eminent author says: "Such covenants, and such only, run with land as concern the land itself, in whosoever hands it may be, and become united with, and form part of, the consideration for which the land, or some interest in it, is parted with, between the covenantor and covenantee." 2 Washburn on Real Property, section 1205. The agreement in regard to the oil, which appellants insist is a covenant attaching to the land, never became united with the consideration for which the land was parted with between the parties. As we have said, the land was parted with for a consideration from which the oil was wholly excluded. As it had been so separated as not to concern the land granted to Elmer Tennant, the oil had no union whatever with the consideration for the grant. It did not enhance that consideration, as we in fact see from the nature of the agreement.

We are of opinion that the decree should be affirmed.

*Affirmed.*