SHERMAN G. CUMMINGS *et al.* v. UNITED FUEL GAS COMPANY, *a Corporation*

(CC 535)

Submitted October 29, 1935. Decided November 26, 1935.

600

*S. P. Bell,* for plaintiffs.

*Harper & Baker, H. A. Ritz* and *B. J. Pettigrew,* for defendant.

MAXWELL, JUDGE:

This certified case of Sherman G. Cummings, Alma Campbell, Webster Cummings, Henry F. Cummings and Mabel Cummings Murphy against the United Fuel Gas Company involves the question of the sufficiency of an amended declaration. The trial court sustained the defendant's demurrer thereto but did not dismiss the action.

On the first of December, 1909, Linnie Cummings, mother and legal guardian of the plaintiffs and their two brothers, now deceased, all of whom were then infants, executed to the defendant, under authority of court, a lease for oil and gas purposes on a tract of fifty-seven and nine-tenths acres of land in Roane County. The lease provided for a one-eighth oil royalty to be delivered in tank or pipe line to the credit of the lessor; also for $300.00 per year for each gas well, and delay rental of $58.00 per year payable quarterly, both the

gas royalty and the delay rental to be paid to the guardian. The lease contains this covenant: "Lessee agrees * * * to protect the lines from drainage and to develop the said territory as fully as developments on surrounding land and on this land shall show to be advisable." The action is based on that covenant. It is alleged that soon after the acquisition of the lease the lessee entered upon the property and drilled one well which is still producing both oil and gas. The lease remains in effect and in the ownership of the defendant.

Upon profert made and oyer claimed, the lease was produced and was considered by the court on the demurrer. Was this procedure proper in the absence of averment that the instrument was under seal (a question not raised in the trial court or here, but of which we take note)? "Profert can not be made or oyer demanded, unless the declaration avers a sealed instrument." *Riley* v. *Yost,* 58 W. Va. 213, 52 S. E. 40. However, since such was declared to be the rule of the common law, applicable in this jurisdiction, there has been a very material change in our law in this, that by act of the Legislature of 1921, chapter 71, section 2, Code 1931, 36-3-1, the affixing of a seal to a deed or other conveyance of an estate of inheritance or freehold is no longer requisite to its full validity and efficacy. This necessitates a relaxing of the above rule in respect of deeds and like instruments, inasmuch as it would be an anomalous situation if profert could not be made or oyer claimed of a deed or lease in suit because, it not being under seal, averment could not be made in the declaration that it was a sealed instrument. We think that the procedure employed in this case was proper.

At the time of filing the amended declaration, June 13, 1934, the plaintiffs had attained the following ages, respectively: Alma Campbell 42, Sherman G. Cummings 36, Webster Cummings 31, Mabel Cummings Murphy 27, Henry F. Cummings 26. Basing their action on alleged failure of the defendant to protect the land from oil and gas drainage through other wells on adjoining lands, and for failure sufficiently to develop the property, the plaintiffs claim $100,-000.00 damages for the ten-year period next preceding the filing of the amended declaration.

In support of its demurrer to the said declaration, the defendant urges that the covenant sued on was not made with the plaintiffs, or any of them, but was made with Linnie Cummings, guardian, and, therefore, the plaintiffs are not entitled to maintain this action in their names to recover damages for the alleged breach of said covenant.

The covenant for protection of lines and development of the property is a covenant running with the land. It was not a mere promise to the guardian, but it was a covenant for the benefit of the owners of the land, and would pass with a grant of the land. *Harbert* v. *Gas Co.*, 76 W. Va. 207, 84 S. E. 770, L. R. A. 1915E, 570. Consult: *Hurxthal* v. *Boom Co.*, 53 W. Va. 87, 44 S. E. 520, 97 Am. St. Rep. 954; 7 Ruling Case Law, page 1106; Annotations, Oil Lease, 79 American Law Reports, page 500. The covenant was for the protection of the infants, owners of the land, and not for the guardian. ''The title to the property of the ward does not pass to the guardian. He has its care and management only. His position is that of an agent or attorney, not that of an assignee or trustee.'' *Lombard* v. *Morse*, 155 Mass. 136, 29 N. E. 205, 14 L. R. A. 273; *Campbell* v. *Fichter*, 168 Ind. 645, 81 N. E. 661, 11 Ann. Cas. 1089. Of like import: Woerner's American Law of Guardianship, page 173; 28 Corpus Juris, page 1128; 12 Ruling Case Law, page 1123.

Although by the terms of the lease the lessee was specifically required to pay gas well royalty and delay rental to the guardian, the covenant with respect to protection of lines and development of the property is in more general terms. The undertaking is abstractly stated. In terms, the ''lessee agrees'' to do the thing undertaken, but the guardian is not mentioned in that connection. Therefore, this not being a direct promise to or covenant with the guardian, but being for the benefit of the infants, it will be treated as made directly with them. An action for the breach of said covenant, within the period of the infancy of the owners of the property, could have been prosecuted by them by next friend. Infants may sue by next friend on a promise made to them. *Lawson* v. *Kirchner*, 50 W. Va. 344, 347, 40 S. E. 344. On the other hand, an action on behalf of the infants for gas well royalty or delay

rental would have had to be by the guardian because the promise was to the guardian.

The case of *Truss* v. *Old*, (Va.) 6 Rand. 556, 18 Am. Dec. 748, relied on by the defendant, we think is not in point. There a guardian, without court authority, sold certain timber trees from the ward's land and received from the purchaser thereof the agreed price. Upon reaching majority, the ward sued the purchaser of the trees to recover the value of the property. In reversing a judgment for the plaintiff, the appellate court said: "If the Defendant in this case had entered and cut and carried away the trees without the license of the Guardian, the Ward could not have maintained the action of Trespass. That would have belonged to the Guardian, who must have accounted to the Ward for the damages recovered. But, being done by the permission of the person legally in possession, there was no trespass whatever. * * * The wrong, if any, done to the Plaintiff, must be compensated by the Guardian." It will be noted that that case deals with trespass to an infant's real estate and in no wise pertains to a written covenant for the protection of such real estate. The contrast is between trespass *quare clausum fregit* and breach of covenant.

The case of *Ross* v. *Gill*, (Va.) 1 Wash. 87, is forcefully illustrative of the principle here involved. A female infant's guardian leased the ward's real estate to a third person at a stated annual rent until such time as the ward should marry or attain the age of twenty-one years, whichever should first happen. The lessee's written covenant to pay rent as set forth in the opinion did not specify whether payment should be made to the guardian or the ward. The ward married before attaining majority, and she and her husband united in an action against the lessee for unpaid rent. The court, however, treated the covenant as a reservation of rent to the infant as alleged in the declaration, and held that the action was properly brought, stating: "The inheritance being in the ward, there is a privity between her and the lessee, and therefore there is no doubt of her right to maintain an action of debt, to recover the arrears of rent." The court then contrasts such situation with one wherein the guardian

by lease in writing reserves rent to himself "to cover advances which he may make for the use of the ward," and says that in such case the action must be brought in the name of the guardian, for, in such circumstances, if the ward would sue there would be a variance between the allegations and the proof.

The law is settled that co-tenants may unite as plaintiffs in an action affecting their joint property rights. 62 Corpus Juris, page 567; *Talley* v. *Drumheller,* 135 Va. 186, 115 S. E. 517; 33 Corpus Juris, page 915; *Lefever* v. *Thomas,* 69 W. Va. 88, 70 S. E. 1095; *Hunt* v. *Mounts,* 101 W. Va. 205, 133 S. E. 323; 7 Ruling Case Law, page 905; 24 Ency. of Proc., page 941; 15 Corpus Juris, page 1300; 20 Ruling Case Law, page 673; *Blondeau* v. *Sheridan,* 81 Mo. 545; 67 Corpus Juris, page 633.

It will be observed from the stated ages of the plaintiffs, respectively, that when the amended declaration was filed only the three elder ones had been of legal age for the entire ten years for which damages are claimed. The two younger ones had been of legal age only five and six years, respectively. The ten-year period therefore extends back into the infancy of the two younger plaintiffs. Have they the right to sue for alleged damages arising partly before they attained majority and partly since? We answer in the affirmative, because, as stated, we are of opinion that within the infancy period they could have sued by next friend, and, not having sued by next friend within that period they have the right now, as adults, to sue for damages which they claim they suffered before they reach their majority because of breach of the covenant involved; and, there is no reason why they should not join that claim with their claim for damages suffered since they attained majority.

We are therefore of opinion that the amended declaration is sufficient as a matter of law, and that the demurrer should have been overruled. The action of the trial court is reversed and the case remanded.

*Reversed and remanded.*

KENNA, JUDGE, concurring:

I agree with the conclusion reached in the majority opinion,

but I am not in accord with the reasoning by which that result was arrived at.

The covenant upon which the action was brought was an express covenant contained in a lease dated the 1st day of December, 1909, signed by Linnie Cummings, guardian of certain infants, and made to the United Fuel Gas Company as lessee. The lease was made pursuant to an order entered in a summary proceeding in the Circuit Court of Roane County. It is true that this particular covenant does not expressly name the guardian. The majority opinion states: ''In terms, the 'lessee agrees' to do the thing undertaken, but the guardian is not mentioned in that connection. Therefore, this not being a direct promise or covenant with the guardian, but being for the benefit of the infants, it will be treated as made directly with them.'' The infants were not parties to the lease nor were they named in the covenant. As I see the matter, the guardian was the only party in the lease with whom the covenant could possibly have been made. The covenant was, I think, in fact made directly with the guardian.

Our case of *Lawson* v. *Kirchner*, 50 W. Va. 344, 40 S. E. 344, is authority for the proposition that infants may sue by next friend for the recovery of rent reserved expressly to be paid to them. The case does not hold that a covenant made in a lease by the guardian of infants, wherein the infants are not named, may be sued upon in the name of the infants by their next friend.

I do not think that the use made in the majority opinion of the case of *Ross* v. *Gill*, (Va.) 1 Wash. 87, is sound. I think the statement made in the majority opinion to the effect that the lessee's written covenant to pay rent as set forth in the opinion (referring to *Ross* v. *Gill*) did not specify whether the payments should be made to the guardian or to the ward, is incorrect. While it is correct that the statement of fact, apparently made by the reporter and certainly not a part of the opinion, quotes a memorandum signed by one Joseph Jones in behalf of the guardian which sets forth the terms of the lease, the statement of fact at the same time makes it clear that the action was brought upon a *verbal* lease, using

the following language: "That the plaintiffs also proved by a witness, as well as by letters of the defendant, that a *verbal* contract was entered into between the mother of the plaintiff with the defendant, *as stated in the declaration,* of which the defendant took the above memorandum, written by himself and signed by Joseph Jones: That in pursuance of the agreement aforesaid, the defendant entered into, and was possessed of the demised premises, but that they produced no proof of any contract between the plaintiffs and the defendant, other than as above, or that the memorandum aforesaid was ever assigned to the plaintiffs, otherwise than as stated in the declaration * * * " (italics supplied). The declaration expressly avers that the rent was reserved to be paid to the infant, according to the same statement of fact. It will be observed that this statement of facts leaves no room for a written covenant between the guardian and the defendant. Furthermore, the opinion in the case, as I read it, expressly finds that the rent reserved in the lease made by the guardian was reserved to be paid to the infant. The full language of that part of the opinion which is quoted in the majority opinion filed in this case is as follows: "The reservation of the rent to the infant was proper, and can not be likened to the case of a reservation to a stranger; for the inheritance being in the ward, there is a privity between her and the lessee, and therefore, there is no doubt of her rights to maintain an action of debt to recover the arrears of rent." I suggest, with deference, that from the foregoing it is perfectly plain that the court in *Ross* v. *Gill* based its conclusion upon the fact that the reservation of rent was made to the infant individually. The court did not treat a general reservation of rent in a lease made by the guardian and to which the infant was not a party, as though the reservation had been made to the infant. In *Ross* v. *Gill* the reservation of rent was in fact made to the infant. The case rested, not upon a covenant to pay rent made in a lease by the guardian and *construed* as a covenant upon which the infant could sue by next friend because it was made for the infant's benefit, but upon a covenant expressly reserving the rent to the infant. The case holds that an infant may sue by next friend

in an action of debt to recover rent reserved expressly to the infant. The difference, I think, is apparent.

Of course, whatever the guardian does is for the benefit of the infant. The guardian made the lease in this case for the benefit of the infants, and could not have made it unless she had been able to show that it was for the benefit of the infants. A covenant expressly made in the name of the guardian would have been for the benefit of the infants, a covenant made expressly to the infants would have been for the benefit of the infants, and a general covenant in a lease made by the guardian would have been for the benefit of. the infants also. Therefore I do not believe that this question is to be determined on the basis of benefit. The guardian made the lease. The consideration, under the direction of the court, moved from the guardian. The covenants that were made by the lessee in accepting the lease were made to the guardian. Whether the guardian's name was mentioned in each particular covenant or not makes no difference. I therefore am of the opinion that the guardian is the proper person to sue during the infancy of the ward for a breach of the covenant. To say that the infant is the proper person to bring such an action, it seems to me, relieves the guardian of the duty to manage the ward's estate to that extent, and places the responsibility of deciding when such an important step, as bringing an action for breach of covenant, should or should not be taken, upon the infant, who the law says is not capable of making such decisions. The very purpose and reason for the guardianship is to that extent defeated. It seems to me that such a result is to be avoided where it can be, and allowed only where specific language, as where a covenant is expressly made to and with the ward, requires it.

Although the position of the guardian is not that of a trustee, it seems to me that, upon termination of the guardianship upon the ward's attaining his majority, the analogy is to the termination of an express trust limited to expire at a time certain. I understand that in such a case no reconveyance is necessary to unite the equitable and legal interests in the beneficiary. Upon the ward's attaining majority the control and management of the guardian of his estate is at an end. I

believe that the provisions of Code, 44-10-7 (Sec. 7, ch. 82, Code 1923), are declaratory of the same rule as to guardian and ward. The section cited provides, among other things, that guardianship shall terminate upon the ward's reaching the age of twenty-one years, and that "At the expiration of his trust, he shall deliver and pay all the estate and money in his hands, or with which he is chargeable, to the person or persons entitled thereto." This provision, it seems to me, was manifestly intended to invest control of the entirety of the infant's estate in the infant at the time of his reaching his majority. If the covenant was breached during infancy, the right of action upon it would be a part of the infant's estate, and would at once devolve upon the infant upon his attaining the age of twenty-one years. The same would be true of the infant's interest under the lease, and if the breach occurred after the former infant had reached his majority, then the right of action for such a breach of covenant would also be in him. The guardian is the proper person to sue upon a breach of covenant made with the guardian when the suit is instituted prior to the majority of the ward. After the majority of the ward, the ward is the proper person to sue, whether the breach occurred before his reaching his majority or after.

On the basis of what has been said, I do not question the soundness of the conclusion reached in the majority opinion. I do not think, however, that the cases cited in the opinion sustain the conclusion reached; nor do I believe that the argument advanced is sound.