F. F. McIntosh *et al. v.* J. B. Vail *et al.*

(No. 9471)

Submitted September 8, 1943. Decided December 7, 1943.

Fox and Lovins, Judges, dissenting.

*Brown, Jackson, & Knight, C. W. Moxley,* and *W. Goodridge Sale, Jr.,* for appellants.
*C. C. Williams, Jr.,* and *C. E. Goodwin,* for appellees.

Riley, President:

By this bill in the nature of an interpleader, brought by F. F. McIntosh and E. W. Grimm, partners doing business as McIntosh and Grimm, in the Circuit Court of Jackson County, plaintiffs sought the determination to which of two groups of claimants certain gas royalties belong. The salient issue is whether language used in

the deed of conveyance by Mary E. Clerc created a covenant real or one merely personal. The effect of the decree of the circuit court being to adjudicate it a covenant real, appellants (the administrator and heirs of J. M. Stone, deceased) seek a reversal here.

Involved in this suit are two leaseholds, one of ninety-four acres and one of one hundred two and one-half acres. To each of the leaseholds there are two sets of conflicting interests. This appeal is concerned only with the tract of ninety-four acres, while the other tract is considered in the appeal (No. 9472) of S. G. Starcher, the opinion in which is announced contemporaneously herewith.

The issue was submitted to the trial court on the pleadings filed. Therefrom the following facts appear: On November 2, 1899, Mary E. Clerc conveyed to J. M. Stone, C. T. Gates, and R. L. Rogers, a tract of land containing ninety-four acres, situate in Jackson County. The language of that deed, which furnishes the basis of the instant controversy, is as follows:

> "First party also expressly reserves from the sale herein made, the oil and gas in and under all the lands herein conveyed and also the exclusive right of operating thereon for oil and gas, together with the rights of way necessary for such operations and the rights to lay necessary pipes over and to erect tanks thereon and to take and use water from said premises, and also the rights to erect and remove at any time, all property placed thereon by said first part, or her assigns in prospecting for or producing oil or gas. But if oil or gas is found in paying quantities on said lands, first party and her assigns shall yield and pay to parties of the second party or their assigns, one full sixteenth (1/16) of the oil and gas produced and marketed from said lands."

The grantees paid the sum of five hundred dollars cash, and the grantor reserved a "vendors lien on the lands herein conveyed" to secure the unpaid purchase money. Thereafter Rogers granted to Stone and Gates his un-

divided one-third interest reserving "the oil and gas and privileges mentioned and reserved in * * * [Mary E. Clerc's conveyance], but hereby conveys to second parties all of the interest therein that may accrue to said" Rogers. On November 20, 1900, Stone and Gates and their respective wives conveyed the ninety-four acre tract to W. E. Parrish under a general warranty; and under date of June 29, 1903, W. E. Parrish conveyed a portion of that tract to one Annie M. Miller. Neither deed mentioned any oil, gas or mineral reservation.

In October, 1903, Stone and Gates as individuals and partners were adjudged bankrupts in the District Court of the United States for the Northern District of West Virginia. During the following month Mary E. Clerc applied to the referee in bankruptcy for permission to institute a suit in the Circuit Court of Jackson County, to enforce her rights under the vendor's lien retained by her in the deed to Stone, Gates and Rogers. The answer of appellees avers that the trustee in bankruptcy for each of the adjudicated bankrupts declined to accept any right, benefit or interest of said J. M. Stone in said covenant and that said property was abandoned to and reverted to said J. M. Stone. Mary E. Clerc thereafter instituted a vendor's lien suit and Stone, Gates and Rogers, as well as the trustees of the respective estates of Stone and Gates as bankrupts, were made parties defendant, but Stone and Gates were dismissed from said suit prior to any adjudication of their interests arising by reason of the covenant herein under consideration. According to appellees' answers, Mary E. Clerc was authorized "to institute such actions at law or suits in equity as she may deem necessary to protect her rights and interests in the" ninety-four acre tract of land. The answers aver that the decree ordering sale provided as follows: "But in such sale the oil and gas rights reserved by the plaintiff in said deed shall be reserved and preserved to her to the same extent"; that the commissioners in reporting the sale made of said ninety-four acre tract reported that it was "subject

to the oil and gas rights of the plaintiff and rights of way reserved to her"; that the decree of August 3, 1904, directing the execution of the deed provided: "but there shall be reserved in said deed the oil and gas rights to plaintiff reserved to her by said decree of sale"; and that in the deed from the special commissioners to The A. M. Carson Company, purchaser of the property at said judicial sale, it was provided that, "The same reservation as to certain roads or rights of ways and of oil and gas in or under said land and the developments theretofore contained and reserved in said deed of Mary E. Clerc to said Stone, Gates and Rogers dated November 2, 1899, are hereby expressly reserved."

Mary Clerc died intestate in 1923 leaving surviving her as her only heir at law her daughter, Adella Clerc Gardner. On June 1, 1937, Adella Clerc Gardner leased the ninety-four acre tract for oil and gas purposes to the interpleading plaintiffs, F. F. McIntosh and E. W. Grimm, partners. On March 25, 1941, before this suit was brought and any drilling was begun, plaintiffs and some of the royalty claimants in both appeals entered into an agreement consolidating said tracts as a unit aggregating one hundred ninety-six and one-half acres for the purpose of the more economical operation for oil and gas, which agreement provided, in effect, that the royalties be shared proportionate to the ownership interests in both tracts upon production of oil and gas in paying quantities.

The appellees predicate their claims to the royalties in issue upon the title which The A. M. Carson Store Company obtained at the judicial sale, while appellants' position is that the ownership of the oil and gas underlying the ninety-four acre tract is "subject to, charged with the performance of, and encumbered by the covenant of the said Mary E. Clerc, to-wit, that if oil and gas were found in paying quantities on said 94 acres there should be yielded and paid to the said J. M. Stone and the said C. T. Gates, or their assigns, one full sixteenth (1/16) of the oil and gas produced and marketed from said land."

At the outset in the consideration of the instant question, it is noteworthy that, despite the fact that principles governing the transfer and ownership of real property and interests therein, as a general rule, became well established in the various states in this country, there has been utter confusion in judicial decisions involving the question whether covenants contained in deeds of conveyance were real, so as to run with the land, or merely personal. An eminent author stated that it has not been possible to furnish absolute tests to determine "what covenants touch and concern the land and what do not", and concludes that the "question is one for the court to determine in the exercise of its best judgment upon the facts of each case". Clark, Covenants and Interests Running with Land (1929), Page 76.

In Spencer's Case, 5 Coke 16a (1583), it was said that three factors were requisite for a covenant to run with the land, namely: (1) Privity of estate between covenantor and covenantee; (2) the benefit and burden had to "touch and concern" the respective estates of the covenantor and covenantee; and (3) where the covenant related to a thing not in esse, the word "assigns" was necessary. Present day writers say that, conventionally, a real covenant is said to consist of four essential factors: form, intent, nature of the promise (whether "touching" or "concerning" the land) and privity. Clark, id., page 74; Article Enforcement of Affirmative Covenants Running With the Land, 47 Yale Law Journal 821 (1938). Since there is a lack of judicial criteria generally, resort should be had to the cases of our own jurisdiction for legal guidance.

An important consideration bearing upon the question whether the instant covenant is real or personal is whether under the Clerc deed the grantees were vested with an interest in the oil and gas minerals in and underlying the surface granted. In this jurisdiction it has been held that a grant or reservation, as the case may be, of royalties, rentals and income which might arise from the operation

of land for oil and gas purposes is, in fact, a grant or reservation of such minerals in place. *Paxton* v. *Benedum-Trees Oil Co.,* 80 W. Va. 187, 94 S. E. 472; *Snodgrass* v. *Koen,* 82 W. Va. 337, 96 S. E. 606; *Manufacturers Light and Heat Co.* v. *Knapp,* 102 W. Va. 308, 135 S. E. 1. The principle enunciated in these and similar cases is grounded upon the reasoning that the beneficial use is equivalent to ownership in place and that such result effectuates the intention of the parties. See *Toothman* v. *Courtney,* 62 W. Va. 167, 176, 58 S. E. 915. In *Jackson* v. *Dulaney,* 67 W. Va. 309, 67 S. E. 795, where a grantor excepted and reserved one-tenth of all the mineral oil that may be obtained by the grantee, his heirs and assigns, from the land granted, to be delivered on the land to the grantor, his heirs and assigns, it was held that there had been excepted and reserved one-tenth of all the oil produced, "possessing the same quality of estate as royalty reserved in an ordinary lease for oil and gas purposes." Syl., point 1. There arose in this jurisdiction in a series of cases involving the apportionment of royalties arising under a lease of property which subsequent to the date of the lease had been partitioned by the lessor, the question whether royalty was or is a separate and distinct entity. In *Campbell* v. *Lynch,* 81 W. Va. 374, 379, 94 S. E. 739, a majority of the Court was of the opinion that royalty was not oil in the ground or the title thereto, but a separate and distinct entity; while in a dissenting opinion Judge Ritz disagreed with that position, declaring that a grant of the rents and profits or the income of land passed the land itself, both in law and in equity. In *Pittsburgh and West Virginia Gas Company* v. *Ankrom,* 83 W. Va. 81, 97 S. E. 593, two of the judges were of the opinion that the *Campbell* case, *supra,* should be overruled, but it was not until the recent case of *Walker* v. *West Virginia Gas Corporation,* 121 W. Va. 251, 3 S. E. 2d 55, that the issue whether royalty should be considered as an estate distinct from the oil and gas itself, presented in the majority and dissenting opinions in the *Campbell*

case, became firmly established and unquestionably this Court disapproved the view on that issue expressed in the *Campbell* case. See Article, Equitable Apportionment of Oil and Gas Royalties, 46 W. Va. Law Quarterly, 66, 76. These cited cases concerned oil and gas in place, and royalty in those instances was considered as an interest in real property since oil and gas in *situ* were interests real. However, where oil has been brought to the surface the royalty therein has been said to be personal property. *Warren* v. *Boggs,* 83 W. Va. 89, 97 S. E. 589.

In the instant case Mary E. Clerc covenanted to yield and pay oil and gas produced and marketed from said lands. When oil and gas is produced and marketed from said lands, it loses its character of real property and, as shown in the *Warren* case, assumes the quality of personal property. Hence it is clear that it was not intended by the grantor that the grantees were to be vested upon delivery of the deed of any interest in real property. The distinction between oil and gas *in place* and oil and gas *produced* appears in *McDonald* v. *Bennett,* 112 W. Va. 347, 164 S. E. 298, wherein the word "produced", qualifying a reservation of oil and gas, was held not to mean oil and gas in place.

That. the parties to the deed did not comprehend that the grantees were to be vested with any interest in real property is strengthened by the further fact that the grantor reserved "the exclusive right of operating thereon for oil and gas, together with the rights of way necessary for such operations" has legal significance in this jurisdiction. The bare reservation of the right and privilege to operate lands for oil and gas has been held to effect a severance of oil and gas in place. *Jamison Coal & Coke Co.* v. *Carnegie Natural Gas Co.,* 77 W. Va. 30, 87 S. E. 451. In *Hale* v. *Grow,* 88 W. Va. 173, 106 S. E. 409, where the grantor expressly reserved "the right to all Oil, Coal and other minerals pumped or excavated from the land herein conveyed, with the privilege of working upon said land for the purpose of obtaining such oil or minerals, the right

of ingress and egress to and from the portion of said land necessarily occupied by such mining or pumping, paying therefor as rental to the second party the one-tenth (1/10) part of all such oil, coal or other minerals, if any should be obtained", the Court held:

"A clause in a deed conveying a tract of land, which, in terms, reserves the right to all oil, coal and other minerals taken from the land, with the the privilege of entering thereon and obtaining the same and binds the grantor to pay to the grantee, as rental, one-tenth of such minerals, if any should be obtained, constitutes an exception and retention of the title to minerals in place."

By her reservation Mary E. Clerc definitely excluded any idea that the grantees or covenantees were to have any rights so far as the development of the oil and gas was concerned. The choice of words used to grant the land to Stone, Gates and Rogers and to reserve the oil and gas and appendant rights thereto in Mary E. Clerc shows the aptitude of the scrivener in the preparation of that instrument. This is a pertinent factor in considering the effect of the grantor's obligation to "yield and pay" an interest in the oil and gas produced and marketed, and, we think, requires that full meaning be accorded to the choice of the words "yield and pay". Had the parties intended that the grantees be vested with an interest in the oil and gas upon the delivery of the*deed, the other portions thereof which show the use of esoteric terms would certainly have impelled the use of terms of grant. Moreover, there would have been no necessity for the covenantor to impose upon herself and her assigns the active duty "to yield and pay". In the construction of the Clerc deed, considered in Appeal No. 9472, the omission of the words imposing this obligation, distinguishes the two cases. Hence, from the foregoing, it must be said that there was effected affirmatively a severance of all the oil and gas in place reserved in their entities to the grantor, and as clearly the same factors negative any right of the grantees to an interest in the oil and gas in place.

From the foregoing it is evident that the effect of the deed from Mary E. Clerc was to vest the grantees with title to the surface while the grantor retained title in fee to the oil and gas. Upon production of oil or gas in paying quantities Mary E. Clerc covenanted *then* to·pay and yield "one full sixteenth" of the oil and gas produced and marketed. .

In *Tennant* v. *Tennant,* 69 W. Va. 28, 70 S. E. 851, and *Rawling* v. *Fisher,* 101 W. Va. 253, 132 S. E. 489, this Court refused to characterize the covenants involved in the respective cases as covenants real because they related to an estate *reserved* rather than one *granted.* In each of those cases there existed a severance of the minerals from the surface, and undeniably the covenants respected the minerals reserved rather than the surface estate. So in the instant case the grantor's covenant respected the minerals reserved, for the right of the covenantor as the owner of the minerals in fee to all of the royalties upon production in paying quantities was restricted by the obligation "to pay and yield" pursuant to the terms of the covenant.

In *Lydic* v. *B. & O. Railroad Co.,* 17 W. Va. 427, a right of way through land was granted to the railroad company, and in the deed, as consideration for the grant, the railroad covenanted with the grantor, his heirs and assigns, to build and forever maintain a switch from the railroad to the mill on the land for the use thereof, and this was held to be a covenant real which.ran with the mill. That case, it would seem, illustrates a situation in which the thing granted was a right of way, yet the covenant touched and respected — not the right of way — but the estate which remained vested in the landowner after grant of the right of way. With like result are *Lucas* v. *Smithfield, C. & H. F. Turnpike Co.,* 36 W. Va. 427, 15 S. E. 182, and *Harper* v. *The Virginian Railway Co.,* 76 W. Va. 788, 86 S. E. 919. Are these cases inconsistent with, and contrary to, the *Tennant* and *Rawling* cases? We think not. As noted above, one of the essentials of a covenant real is

that there must be privity of estate, even where the covenant touches and concerns land. *Hurxthal* v. *Boom Co.,* 53 W. Va. 87, 44 S. E. 520.

It is clear that in neither the *Tennant* nor the *Rawling* case was there a vehicle of conveyance to which the covenant respecting minerals could attach: hence, there was no privity of estate. This analysis is consonant with the rule stated in 11 Cyc. 1080, cited in the *Tennant* case, to the effect that the act covenanted to be done or omitted must concern the land or estate conveyed. The deed of Mary E. Clerc contained a conveyance of surface together with the reservation of the minerals and the covenant relating thereto, just as in both the *Tennant* and *Rawling* cases, the covenants under consideration there were parts of agreements which involved both the surface and minerals. Hence it is our conclusion that in the instant case there was no privity of estate as to the oil and gas between the covenantor and covenantee, and the covenant therefore may not be held a covenant real.

It is contended by counsel for appellees that the covenant as to gas royalties is analogous "to the free gas covenant, which was held an appurtenance in *Harbert* v. *Natural Gas Co.,* 76 W. Va. 207", 84 S. E. 770. Examination for the reason which prompted the Court's conclusion that the covenant for free gas was a covenant real does not appear from the opinion other than it is as much a covenant real as one to pay money rentals on gas wells and a benefit to the land. The first cases which developed the doctrine of real covenants were those in which covenants between landlords and tenants, relating to the use and enjoyment of leased premises, were involved. In such cases the estate of the tenant was, of course, a possessory one, while that of the landlord was a reversionary one. Existence of privity of estate was clear under such relationship. Covenants on the part of the tenant to repair or to pay rent unquestionably respected and concerned the subject matter of the estate of each of the contracting parties, and such covenants enhanced the value

of the reversionary estate of the landlord. Both privity of estate and the factor of touching and concerning the land in a beneficial way existed in the case of landlord and tenant. See *W. Va. C. & P. R. Co.* v. *McIntire,* 44 W. Va. 210, 28 S. E. 696, which holds that a lessee's covenant to pay taxes is a covenant real. Thus it is understandable that courts, when considering covenants in mineral leases to pay royalty, to furnish free gas, to test and develop the land, and to protect it from drainage uniformly applied the rule of covenants running with the land in ordinary leasehold estates. See Summers, Oil and Gas, Perm. Ed., Vol. 3, Section 553; also *Millan* v. *Bartlett,* 69 W. Va. 155, 71 S. E. 13; *Hefner* v. *Light, Fuel & Water Co.,* 77 W. Va. 217, 87 S. E. 206; *Steel* v. *American Oil Development Co.,* 80 W. Va. 206, 92 S. E. 410; *Cummings* v. *United Fuel Gas Co.,* 116 W. Va. 599, 182 S. E. 789.

Appellee's counsel argue that the covenant touches and concerns the land because the reservation includes rights of way, rights to lay pipe lines, erect tanks and use water from the premises, and that the covenant is a promise of the owner of the minerals to compensate the surface owner for use of the easement. With this position we do not agree. The easement did not emerge from the grant or covenant of the grantor, but embraced only rights which were reserved by Mary E. Clerc in her deed to Stone, Gates and Rogers.

Appellees say, however, that "the agreement enhances the value of the land and renders it more convenient and beneficial to the owner". Of course, the benefit of a covenant such as is involved in this suit would be valuable to anyone, but that factor alone is insufficient to meet the test of a covenant real. In *Lydick* v. *B. & O. R. R. Co., supra,* point 5 of the syllabus, reads:

> "If some interest in land or a right of way or incorporated hereditament issuing out of land is granted, and in the deed the grantee covenants with the grantor and his assigns that he will do something which concerns the land *and becomes united to it,* so that it affects the value of the land,

in whosesoever hands it may come, such covenant
runs with the land, and there is privity of estate
between such covenantor and such covenantee."
(Italics supplied)

Before the question of benefits becomes pertinent as we
have already noted, it is essential that there be privity of
estate which we have shown to be lacking in the instant
case, but, as the Court indicates in the syllabus in the
*Lydick* case, the covenant, if it is to be considered a cove-
nant real, must become united with the land. Where, as
in the instant case, the covenant concerned is so detached
from the use of the surface and, as was true in the *Lydick*
and *Lucas* cases, *supra*, does not relate to the use of the
land itself, it cannot be said that the covenant in any
wise is beneficial thereto in the legal sense essential to
make it a covenant real.

We have heretofore noted that the covenant burdened
the estate reserved, and it is well to note also that this
Court, adhering to the English or minority rule in this
country, is committed to the doctrine that, except as be-
tween landlord and tenant, no burden can be imposed on
land by a grantor's covenant so as to bind a subsequent
grantee of the covenantor. *West Virginia Transportation
Co.* v. *Ohio River Pipe Line Co.*, 22 W. Va. 600; see also
3 Tiffany on Real Property, 3rd Ed., Section 850.

It is suggested by appellant's counsel that even if the
covenant is personal the Stone interest therein was viti-
ated by the vendor's lien suit. In this regard it must
be answered that even though this were so, the destruc-
tion of the covenant—being personal—could not in any
wise inure to appellees' benefit. We do not deem it requi-
site to inquire of the effect upon the covenant of the
vendor's suit and proceedings in the bankruptcy court.

From the foregoing we are of opinion that the decree
should be reversed and the cause remanded for entry of
a decree consonant with the principles herein set forth.

*Reversed and remanded*

Fox, Judge, dissenting:

I am unable to concur in the opinion of the majority in this case.

On November 2, 1899, Mary E. Clerc conveyed to J. M. Stone, C. T. Gates, and R. L. Rogers, along with other lands, a tract of ninety-four acres, situated in Jackson county. The granting clause of the deed reads as follows: "The said Mary E. Clerc grants unto the said parties of the second part, with covenants of general warwanty, the following described three several parcels of land all situated in Jackson County, West Virginia," and then describes the ninety-four acre tract. Without more, this grant vested in the grantees a fee simple estate in the land conveyed; but the grantor made a reservation of the oil and gas, with operating rights, in the land conveyed, and did so in the following language: "The first party also expressly reserves from the sale herein made the oil and gas in and under all the lands herein conveyed, and also the exclusive right of operating thereon for oil and gas, together with the rights of way necessary for such operations and the right to lay necessary pipes over and to erect tanks thereon and to take and use water from said premises, and also the right to erect and remove, at any time, all property placed thereon by said first party, or her assigns, in prospecting for or producing oil or gas". She then limited the reservation by the following language, which immediately follows, and is an integral part of the reservation: "But if oil or gas is found in paying quantities on said lands, first party and her assigns shall yield and pay to parties of second part or their assigns, one full sixteenth (1/16) of the oil and gas produced and marketed from said lands."

Of course, the deed must be read and considered in its entirety, and likewise the reservation. This is a fundamental rule of construction, and in this case protects not only the grantor but the grantees as well. In the majority opinion this rule is recognized as applied to the deed in

its entirety, and repudiated when applied to the reservation.

Following simple and well established rules of construction, I think the deed in question did this: It conveyed the ninety-four acre tract of land in fee; and then reserved the oil and gas, but limited the reservation by the provision last quoted above, the effect of which was to leave vested in the grantees an interest in the oil and gas when developed, but, nevertheless, an interest which passed by the granting clause of the deed and then became fully vested in the owners of the land conveyed, and was at all times an interest attached to the ownership of the land. No violation of the rule against perpetuities is involved, because the interest was one created by the deed which became presently vested in the grantees therein. Their enjoyment of this interest was, in a sense, contingent upon the development of the oil and gas, but I think it was such an interest as could have been made the basis of a suit by the grantees to compel development thereof when necessary to avoid a sacrifice of their interests.

The interest which the grantees took in the oil and gas was not essentially different from royalty reserved in an ordinary lease for oil and gas purposes. In *Jackson* v. *Dulaney*, 67 W. Va. 309, 67 S. E. 795, the grantor in a deed executed in 1864, made the following exception and reservation: "Excepting and reserving, however, out of and from the present grant at all times hereafter forever unto the said John S. Morton, his heirs and assigns, one-tenth part of all the mineral oil that may be obtained by the said Howard Spencer (grantee), his heirs and assigns from the said hereby granted tract of land, * * *". And it was held that the effect of this provision "is to except and reserve in such grantor, his heirs and assigns, to be delivered as stipulated, a royalty of one-tenth of all the oil produced, possessing the same quality of estate as royalty reserved in an ordinary lease for oil and gas purposes." What the grantor did in the deed involved in

the case at bar was to reserve to herself one-half of the royalty in the oil and gas when produced, just as the grantor reserved a one-tenth interest in the deed considered in *Jackson* v. *Dulaney, supra*. If the interest reserved in that deed was the same quality of estate as royalty reserved in an oil and gas lease, why does not the same rule apply to the reservation in this case? The fact that she also reserved the right to control the leasing of the property, subject to the equitable rights of the grantees, does not affect the first proposition in the least. Taking the deed as a whole, that is exactly what the grantor did, and the remaining interest in the oil and gas passed to the grantees and became a part of the land conveyed, and, unless thereafter reserved, passed with the land.

I am not concerned as to how the interest conveyed, or, as the majority would say, reserved, is described. It may be that it is correctly described as a covenant running with the land. I prefer to treat it as an interest in land, which passed to the grantees under the deed, and which would pass by conveyance of the land, unless specifically reserved. There has been no such reservation, and therefore the present owners of the land are the owners of the interest in the oil and gas. But if it be, strictly speaking, a covenant running with the land, the result is the same. Many cases are cited to sustain the statement in one of the briefs that "A covenant, if it be appurtenant to and run with the land conveyed, must attach to the land conveyed the covenantee and must tend to diminish or increase the value of the real estate to which it adheres in the hands of the holder". Accepting this as true, it cannot mean to refer to the surface of the land only. Here the land was conveyed subject to a limited reservation of the oil and gas. The whole estate conveyed was affected by the provision concerning the oil and gas, when developed. The value of the estate, and the land conveyed, was increased, as to the grantees, by the provision which held out to them the prospect that at some time

rents and royalties would accrue from the oil and gas therein.

The cases of *Tennant* v. *Tennant*, 69 W. Va. 28, 70 S. E. 751, and *Rawling* v. *Fisher*, 101 W. Va. 253, 132 S. E. 489, do nothing more than hold, in the first case, that "In order that a covenant may run with the land, it must respect the thing granted and the act covenanted must concern the estate conveyed", and, in the second, "A covenant is a covenant real and runs with the land only when it attaches to the land or some interest therein actually granted to the covenantee". With these statements of law I fully agree; but in the case at bar, the interest in the oil and gas actually passed to the grantees by the grant in the Clerc deed of November 2, 1899. Therefore, these cases do not bar the contentions of the owners of the land, but support them.

How can it be successfully contended that the oil and gas interests involved herein are not connected with the land? Oil and gas are parts and parcels of the land. The parties to the Clerc deed were dealing directly with these minerals, in the sale of the land. The grantor reserved them, subject to a specific limitation, and to the extent that limitation was effective there was no reservation of the oil and gas. The assumption of the majority members that there was a severance of the oil and gas from what may be termed the surface of the land is the outstanding error in their position, and, without this assumption, their entire argument falls to the ground. This assumption is based on a part only of the reservation clause. I have always understood that to reach the meaning of any writing the whole thereof should be considered. Here a part of the reservation clause is completely ignored and the arbitrary statement made that there was a complete severance of the oil and gas from the surface of the land conveyed. There was, in my opinion, never any severance of the oil and gas effected by the reservation, when the limitation aforesaid is considered as it must be. To the extent of the limitation, the oil and gas remained a

part of the land conveyed. If it be said that all the grantees acquired was the right to royalties, the reply is that the right to receive such royalties is equivalent to the ownership of the oil and gas in place, as recognized in the majority opinion, and if that does not connect the oil and gas with the other elements of the estate granted, I cannot understand how such connection could be retained. I fail to see what the cases of *Campbell* v. *Lynch, Pittsburgh & West Va. Gas Co.* v. *Ankrom,* and *Walker* v. *West Va. Gas Corp.,* admittedly cases dealing with the apportionment of royalty, have to do with the question at issue in this case.

But it is said that the language of the provision limiting the reservation provides that the grantor, Clerc, "shall yield and pay to the parties of the second part or their assigns", and that this creates a personal covenant on the part of the grantor, and not one running with the land; and that the benefits of such covenant still remain in the grantees in the deed of November 2, 1899, and not with the present owners of the land in which the oil and gas in question exist. In my view, that provision relates only to the mechanics of the transaction. It matters not how the royalties are paid or by whom. We should look to the subtsance of the transaction and not its form. The rights of the grantees are of the same value if royalties are paid by the original grantor, as they would be if paid by the person who develops the minerals from which the royalties accrue—no greater, no less. So we are governed by form, not substance, when we make a decision based on language which does nothing more than prescribe the manner in which the persons entitled to the royalties shall have them paid.

This and a companion case, Appeal No. 9472, which may be referred to as the *Starcher* case, decided today, will illustrate the point. In the *Starcher* case the provision limiting the reservation of oil and gas reads: "But in event of oil or gas being developed on said land said second party or his assigns shall be entitled to have one full

sixteenth of all oil marketed and one-half of the next proceeds from all gas sold from said land." The words "second parties or his assigns shall be entitled" are relied upon to distinguish that case from this. In the case at bar, the grantor agrees to "yield and pay to" the grantees, while in the *Starcher* case the grantors are said to be "entitled to * * * the proceeds from all oil and gas sold from said land". Each provision plainly contemplates the sale of the oil and gas, because the word "marketed" is used. What is the real difference between the two expressions? I do not think there is any. There is nothing sacrosanct in these expressions. The phrase "yield and pay" is not uncommon in leases where rents or royalties are reserved. Under the reservations in the deeds in this case and the *Starcher* case, only the grantor, Clerc, or her assigns, had the right to lease the land in question, and it is reasonable to assume that the royalties provided for in such a lease would be paid to the lessor. Of course, other methods of payment could have been followed, but it would be out of the ordinary to do so. In case of production of oil or gas, the lessor would be under obligation to make a division of the royalties under the deeds she had executed. As to one deed, that obligation would arise from her agreement to "yield and pay"; and as to the other, her agreement that her grantee was "entitled" to a specific share thereof. Both deeds, in substance, did exactly the same thing, namely, created a right in her grantees, or their assigns, to a specific share of the royalties in the oil and gas, when developed. Title to oil and gas in place is sometimes said to pass under provisions which give the right to the proceeds thereof, and in this aspect no substantial, if any, difference is perceived as to the status of the parties in this case and those asserted in the *Starcher* case, wherein it is held that the interest in question passed with the land, whereas, in this case, the majority opinion holds the interest to be a mere personal covenant, not attached to or passing with the land. I am unable to see any consistency in the two holdings.

I think the *Starcher* case reaches the correct result, and I would apply the same sound principle to the case at bar, and decree the same result.

Suppose a case in which the grantees were prosecuting a suit to collect from the grantor, Clerc, or her assigns, one-half of the royalties, would anyone say that any distinction could be made as to the rights of the parties, merely because in one of the deeds Clerc had agreed to "yield and pay", while in another deed she stated that her grantee was "entitled". Certainly, the same obligation in favor of the grantees in the deeds arises under either expression, and yet the two cases are attempted to be distinguished, and different decisions made on the same day, each based entirely upon what is supposed to be a fundamental distinction between the two expressions. What creates the fundamental distinction between the supposed case and this case?

Another consideration, not highly important, but which should have influence, is this: The law favors certainty in the vesting of estates, and this applies particularly to lands and interests in lands, for the reason that the free transmission of title thereto is supposed to encourage use and development and is, therefore, in the public interest. Were we to hold the oil and gas interest here involved to be such as passed with the land, where not reserved, there would never be any question as to its ownership; or, if reserved or separated from the surface, it would necessarily be by recordable writing, and thus the owner could be located. On the other hand, if we treat it as a personal estate, or a personal covenant, the real ownership of the interest may be difficult, if not impossible, to locate. This is illustrated by the fact that, in the case at bar, only one-half of the royalties involved can now be paid, for the reason that the Gates distributees are understood to be unknown.

In my opinion, applying simple and common sense rules of construction, it is clear from a reading of the deeds involved in this case and the *Starcher* case, that what the

grantor therein intended was to reserve one-half of the oil and gas royalty, together with the right to lease the properties for oil and gas purposes. One-half of the royalties passed to the grantees under the deeds. The right of the grantor to control the leasing of these properties was not absolute, and could be controlled where, in circumstances of time and opportunity, development became necessary for the protection of those interested in the minerals mentioned in the deeds. Had the grantor, prior to her deed, leased the property for oil and gas purposes, no one would say that the subsequent conveyance of the land would not have passed title to the oil and gas, unless specifically excepted and reserved, together with the royalties which might be derived therefrom under the lease; and who will say that, had the grantor reserved one-half the royalties accruing under the lease, the remaining one-half would not have remained attached to the lands in the hands of the grantees. The case at bar is no different in substance from the suppositious case stated and cannot be distinguished, except through a resort to a species of metaphysical gymnastics, having no relation to realities, and far removed from the ken of the average mind. Instead of following simple rules, well established by our decisions, we now have a technical construction which can only result in future uncertainty and confusion.

I would affirm the ruling of the court below, and I am authorized to state that Judge Lovins concurs in this dissent.