F. F. McIntosh *et al. v.* J. B. Vail *et al.*

(No. 9472)

Submitted September 8, 1943. Decided December 7, 1943.

*S. P. Bell,* for appellants.

*C. C. Williams, Jr., W. F. Boggess, R. B. Goodwin* and *C. E. Goodwin,* for appellees.

Rose, Judge:

F. F. McIntosh and E. W. Grimm, who were the owners of, and operators under, an oil and gas lease covering two separate tracts of land containing 94 acres and 118½ acres respectively, situate in Jackson County, filed their bill in the Circuit Court of that County, interpleading the various claimants to the royalty interests in the oil and gas thereunder. From certain parts of the final decree in the cause two separate appeals were awarded by this Court. The decision in case No. 9471, Stone, et al., appellants, involving the tract of 94 acres is announced simultaneously herewith. The branch of the cause concerning two parcels carved out of the tract of 118½ acres, in which S. G. Starcher is the appellant, is considered in this opinion.

By deed dated December 3, 1902, Mary E. Clerc conveyed 118½ acres of land to S. G. Starcher. This deed contained the following reservation:

> "First party expressly reserved from this conveyance all oil and gas in and under the land hereby conveyed, together with all the customary and necessary privileges on and over said land for leasing prospecting for, developing and mar-

keting said oil and gas, including rights of way over, right to lay pipe lines, erect tanks or other buildings and the right to remove the same at any time. But, in event of oil or gas being developed on said land, said second party or his assigns shall be entitled to one full sixteenth of all oil marketed and one half of the next proceeds from all gas sold from said land."

It will be observed that this reservation is, in some respects, different from that contained in the Clerc deed construed in Appeal No. 9471. In that case the reservation concludes with the following sentence: "But if oil or gas is found in paying quantities on said lands, first party and her assigns shall yield and pay to parties of second part or their assigns, one full sixteenth (1/16) of the oil and gas produced and marketed from said lands." The deed to Starcher, however, has instead as above quoted, this sentence: "But, in event of oil or gas being developed on said land, said second party or his assigns shall be entitled to one full sixteenth of all oil marketed and one half of the next proceeds from all gas sold from said land." In the deed to Stone and others the agreement was that "first party and her assigns shall yield and pay" a certain share of the oil and gas if either is "found in paying quantities"; in the Starcher deed here under appraisement the provision is that "in event of oil or gas being developed" the second party or his assigns "shall be entitled to" a certain part of the oil marketed and of the proceeds of the gas sold. In the one deed the obligation and corresponding right is personal against the grantor and her assigns; in the other the right created in the grantee is directly against the oil and gas itself— a right in rem—the grantor assuming no personal obligation whatever. Hence the construction given to the Stone deed is not controlling as to the deed executed to Starcher.

The Starcher deed clearly (1) conveys the entire tract of 118½ acres; (2) then reserves "all oil and gas" in and under the land conveyed; and (3) finally provides that

upon the happening of a certain contingency, namely, the development of oil and gas on the land, the grantee "shall be entitled to" a certain interest in these minerals. Counsel for the opposing parties discussed this sentence as though it were clearly a covenant, differing only on the question whether it "runs with the land" or is personal. We think, however, that this appraisal of the provision is inadequate and that a right or interest more substantial than a mere covenant was created.

The sentence dealing with the grantee's interest in the oil and gas is a part of the paragraph constituting the reservation in the deed. It is not an independent provision. It begins with the conjunction "but", thus grammatically linking it directly with the preceding sentence. Its direct effect is to limit, or restrict that, which precedes. It is an exception in a reservation. Without this sentence the whole of the oil and gas would be reserved; but, with this addendum something less than the whole of the oil and gas is saved to the grantor. This in turn means that what is not saved to the grantor is effectively conveyed to the grantee. *Freudenberger Oil Co.* v. *Simmons*, 75 W. Va. 337, 83 S. E. 995. By the original and principal granting clause of the deed the whole estate in the land, including oil and gas, purports to be conveyed to the grantee. This is modified by the reservation only to the extent that the oil and gas was saved to the grantor. The aggregate effect of the deed is to convey to the grantee the land, including a right to one-sixteenth of all oil marketed and one-half of the net proceeds of all gas sold therefrom, and to save to the grantor all other interest, right and title to the oil and gas.

The oil and gas right thus conferred upon the grantee takes the familiar form of a royalty, with which the courts and people of this State have been familiar for half a century. As such it is not affected by the words "in event of oil or gas being developed on said land". The concept of royalty always presupposes development or production of the mineral to which it relates. Indeed, substantially

the quoted language is often found in oil and gas leases and has never been considered as creating a condition or contingency, either precedent or subsequent. Nor do the words "shall be entitled to" create any difficulty. The expression "entitled to" has been construed either as signifying the actual vesting of title or as giving an equitable right to claim title. *Holbrook* v. *Wightman,* 31 Minn. 168, 17 N. W. 280; *Thompson* v. *Thompson,* 107 Ala. 163, 18 So. 247; *Spencer* v. *Barker,* 96 Kan. 360, 149 P. 736; *Meehan* v. *Jones,* 70 Fed. 453. In the present case it is immaterial which construction we adopt. The grantee became vested with either full legal title to the oil and gas interest mentioned, or to an equitable right sufficient to enable him to require and enforce legal title thereto. If the latter view is taken we find him now in a court of equity with all necessary parties convened and claiming the enforcement of his right. He either has the legal title or has the absolute right to have it decreed to him in this cause. The result is the same.

Gas having been developed on the premises, Starcher is entitled to one-half the net proceeds of all of that mineral sold from the land unless by some deed he has divested himself of that right. He still has that right unless he has subsequently divested himself thereof.

It appears that he carved out of the tract of 118½ acres two tracts of 48½ acres and 54 acres, respectively. By deed dated March 28, 1905, he conveyed the 48½ acres to A. M. Hupp with certain oil and gas reservations, but Hupp, by a deed dated March 2, 1906, reconveyed the land with the same reservations to Starcher. Starcher by deed dated March 28, 1905, conveyed the 54-acre tract to B. F. Smith with certain reservations as to oil and gas but Smith by deed dated December 11, 1908, reconveyed the same to Starcher with identical reservations. These four deeds, therefore, may be ignored.

By deed dated June 10, 1907, Starcher conveyed the 48½-acre tract to P. Mossier and Laura Mossier with the following reservation and exception:

> "There is reserved and excepted from the operation of this conveyance, all the oil and gas with the rights and privileges to themselves as fully and completely as the same was reserved in the above mentioned deed from Mary E. Clerc to said Starcher to the same extent and no further that the same was reserved by said deed, with all the rights and privileges contained in said deed."

This provision is very clearly an adoption into the deed of the exact reservation contained in the deed from Mrs. Clerc. It expressly reserves and excepts "all the oil and gas with the rights and privileges", but this comprehensive expression is distinctly limited by the words "as fully and completely as the same was reserved" in the Clerc deed "to the same extent and no further". The exact reservation in the Clerc deed, therefore, becomes the reservation in this deed. *Thomas* v. *Young*, 93 W. Va. 555, 117 S. E. 909. The latter must be construed precisely as though it had stated in words that "in event of oil or gas being developed on said land, the said Mossiers or their assigns shall be entitled to a full sixteenth of all oil marketed and one-half the net proceeds of all gas sold from said land." Thus the entire oil and gas interest acquired by Starcher was by him transmitted to the Mossiers. He had no interest in the oil remaining, and the Mossiers obtained exactly the same interest that the Clerc deed had conveyed to him.

The Mossiers conveyed the tract to J. S. Patterson by deed dated October 11, 1910, which contained this clause: "reserving and excepting from the operation of this conveyance, all the oil and gas, together with their rights and privileges, to the same effect, as the same are reserved and excepted in deed from said Starcher to said Pearl Mossier, hereinbefore referred to." The effect of this deed, of course, was to reserve precisely what Starcher had reserved and to pass on to Patterson every interest which Starcher had transmitted to the Mossiers including the oil and gas. By deed dated February 5, 1918, Patterson conveyed the same parcel of land to R. B. Doolittle with

this provision: "The same reservations and exceptions are made in this deed as are made in the said deed from Pearl Mossier and wife to J. S. Patterson the same as if they were herein fully set out." Thus the whole interest in the land, including oil and gas, which Patterson had acquired, was conveyed to Doolittle.

The 54-acre parcel was conveyed by Starcher to the same R. B. Doolittle with the following exception: "Excepting and reserving all oil and gas, in, on and underlying said land together with the customary rights and privileges of removing the same." This exception is unlimited as to the oil and gas and absolutely clear. It prevented any interest in these minerals of any character from passing to the grantee. This means that all interest therein which Starcher had possessed was preserved to him, and Doolittle took no interest of any character in these minerals.

Doolittle died intestate seized of both these parcels of land, and by deed dated December 2, 1939, his heirs conveyed both tracts to Austin Raines with the following provision relating to the 54-acre tract: "There is reserved and excepted from this tract of land such oil and gas reservations and such other reservations as are contained in said deed from said S. G. Starcher to said R. B. Doolittle."; and the following clause as to the 48½-acre tract: "The same reservations and exceptions are made herein as are made in said deed from J. S. Patterson and his wife unto the said R. B. Doolittle the same as if they were herein fully set out." By this deed the Doolittle heirs passed on to Raines every interest in these two tracts of land, including the oil and gas, which R. B. Doolittle had acquired, that is to say, nothing whatever in the 54-acre tract, but the full interest in the oil and gas which Starcher acquired from Mrs. Clerc in the 48½-acre tract.

By deed dated March 5, 1941, Raines attempted to convey to J. B. Vail one-half his interest in the oil and gas under both parcels, the estate conveyed being described as follows:

"A full undivided one-half (1/2) of all their, the said parties of the first part, interest in and to the oil, gas and minerals, together with the full one-half (1/2) of all their, the said parties of the first part, interest in and to any bonuses and incomes derived therefrom, together with all necessary rights and privileges which said one-half ¦(1/2) interest equals a one-thirty second (1/32) of the interest of the oil produced and marketed and a full one-fourth (1/4) of the gas produced and marketed, in and under those two certain lots, tracts or parcels of land."

The effect of this deed was, of course, to vest in Vail one-half the interest in the oil and gas which Raines actually owned. This was one-half of what Starcher got from Mrs. Clerc in the 48½-acre tract, but nothing whatever in the 54-acre tract. Nevertheless, the court by its final decree adjudicated, "That the said Austin Raines and the said J. B. Vail be and are hereby declared to be the owners of an undivided one-fourth interest each in and to all proceeds derived from the production, sale or marketing of the oil and gas in and under the 102½-acre tract of land set out and described in the bill of complaint in this cause." This decree was clearly based on a misconception as to the oil and gas interest under the 54-acre parcel, since no part of that interest had passed out of Starcher and therefore could not by any means have been transmitted to either Raines or Vail. The court should have decreed Raines and Vail each to be entitled to one thirty-second part of all oil marketed and to one-fourth of the net proceeds of all gas sold from the tract of 48½ acres; and that Starcher is entitled to one full sixteenth of all oil marketed and one-half of the net proceeds of all gas sold from the 54-acre tract. The final decree, will, therefore, be reversed to this extent, and as so modified will be affirmed, and the cause remanded.

*Reversed in part; affirmed in part; remanded.*