FLORA TALBOTT DAVIS, *et al.*

*v.*

DON W. HARDMAN, *et al.*

(Nos. 12227-12228)

Submitted September 17, 1963. Decided November 5, 1963.

BROWNING, JUDGE, not participating.

*Clarence M, Rogers, James A. Graham,* for appellants.

*Robert L. Holland, William E. Simonton, Jr.,* for appellants.

*Orville L. Hardman, James M. Powell,* for appellees.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit Court of Doddridge County, presents to the Court for decision the basic question of determining which one of two oil and gas leases is valid; and that, in turn, calls for a determination whether the right to lease is in the owner of the fee, subject to certain reservations of oil and gas rights; or whether the right to lease is in the persons owning the rights thus reserved. The trial court entered judgment in favor of the lessor who owns the fee subject to the reservations, and her lessees.

The tract of land in question contains approximately forty-four acres and is situated on Wolf Pen Run, a branch of Meathouse Fork of Middle Island Creek in New Milton District of Doddridge County. Upon his death William H. H. Davis devised the tract to his four sons: W. G. Davis, Hobart M. Davis, Alva L. Davis and A. Colwell Davis.

The undivided one-fourth interest of W. G. Davis was conveyed without a restriction or reservation of any kind

to A. Colwell Davis. Alva L. Davis thereafter conveyed his one-fourth interest in the tract to A. Colwell Davis, subject to the following reservation: "There is reserved for the benefit of Alva L. Davis, his heirs and assigns, his proportionate share of one-fourth (¼) of the rest and residue of the oil and gas royalty, when produced, in and under said land, but said second party, his heirs and assigns, to have the right to lease said land for oil and gas purposes and to receive the bonuses and carrying rentals." Thereafter there was conveyed to A. Colwell Davis the one-fourth undivided interest of Hobart M. Davis, subject to a reservation identical to that quoted above. As a consequence, A. Colwell Davis became the owner of the tract of forty-four acres, subject to the oil and gas reservations in favor of his two brothers.

In 1916 A. Colwell Davis and his wife conveyed the forty-four-acre tract to William F. Kidner, subject to reservations as follows:

"There is excepted and reserved for the benefit of Alva L. Davis, his heirs and assigns, his equal one-fourth of the oil and gas royalty in and under said land, when produced, being the one-fourth of the usual one-eighth oil royalty and one-fourth of the usual gas well rental from each and every gas well that may be drilled on said premises in the future, being the same royalty excepted by him in deed to said first party, subject, however. to said Jesse F. Randolph Royalty deed.

"There is excepted and reserved for the benefit of Hobart M. Davis, his heirs and assigns his equal one-fourth (¼) of the oil and gas royalty in and under said land, when produced, being the one-fourth of the usual one-eighth oil royalty and one-fourth of the usual gas well rental from each and every gas well that may be drilled on said premises in the future, being the same royalty excepted by him in deed to said A. Colwell Davis, subject, however, to said Jesse F. Randolph royalty deed.

"There is excepted and reserved for the benefit. of said A. Colwell Davis, his heirs and assigns, one-half of the oil and gas royalty, in and under said land, when produced, being one-half of the

usual one-eighth oil royalty, and one-half of the usual gas well rental from each and every gas well that may be drilled on said premises in the future, subject, however to said Jesse F. Randolph royalty deed which royalty deed of said Jesse F. Randolph expires in a few years as shown by his deed.

"Said second party, his heirs or assigns to have the right to lease said land for oil and gas purposes and to receive the carrying rental but any lease that may be hereafter given on said land to be so leased as to be to the best advantage of all parties concerned in the royalty. * * *."

William F. Kidner and his wife conveyed the forty-four-acre tract to George Ahouse, subject to the reservations to which reference has been made previously. George Ahouse, unmarried, conveyed the same tract, subject to the same reservations, to Frank Ables. After his death intestate, the heirs of Frank Ables conveyed the tract, subject to the same reservations, to Lura M. Ables. The ultimate result was that Lura M. Ables became the owner of the forty-four-acre tract, subject to the reservations.

In the meantime, Alva M. Davis became the owner of the reservation in favor of Hobart Davis. As a consequence, A. Colwell Davis and Alva L. Davis each owned a reservation in equal (one-half) proportions affecting the tract of forty-four acres. A Colwell Davis died leaving his widow, S. Maude Davis, one of the plaintiffs, as his sole devisee, and Alva L. Davis died leaving his widow, Flora T. Davis, one of the plaintiffs, as his sole devisee.

Flora T. Davis and S. Maude Davis, owners of the reservations affecting the entire forty-four-acre tract, executed an oil and gas lease to Luther G. Pigott and Franklin G. Michels, doing business as P & M Oil Company. Lura M. Ables, owner of the forty-four acres, subject to the reservations, later executed an oil and gas lease affecting the tract in question to Don W. Hardman and Creed C. Hardman, doing business as Hardman Drilling Company.

Soon after receiving its lease, dated August 29, 1961, Hardman Drilling Company commenced drilling opera-

tions and was successful in establishing a well producing oil and gas. By agreement of all parties in interest, the money arising from the sale of oil produced is being held by Eureka Pipe Line Company, pending the outcome of the litigation involved in this case.

In November, 1961, S. Maude Davis and Flora T. Davis, as lessors, and Luther G. Pigott and Franklin E. Michels, doing business as P & M Oil Company, lessees, instituted an action in the Circuit Court of Doddridge County against Lura M. Ables, her lessees, Don W. Hardman and Creed C. Hardman, doing business as Hardman Drilling Company, and also against various persons who, as a partnership, are assignees of the rights of the Hardmans under their lease from Lura M. Ables.

By its final judgment, the circuit court held that, at the time Lura M. Ables executed the lease to the Hardmans, she was the owner of the forty-four-acre tract with the right to execute an oil and gas lease covering such tract, "subject only to a duty to reserve for the benefit of Flora Talbott Davis and S. Maude Davis a usual one-eighth (1-8) royalty from the actual production of oil and a usual gas royalty from the actual production of gas, and to lease the same to the best advantage of all parties concerned in the royalty." By the same final judgment order, the circuit court held that the lease executed by the Davis women to Pigott and Michels was null and void and, accordingly, it was cancelled as a cloud upon the title of the Hardmans and their assignees.

This Court granted an appeal from the final judgment of the circuit court pursuant to a petition presented in behalf of Flora Talbott Davis and S. Maude Davis, lessors and plaintiffs; and the Court also granted an appeal from such final judgment pursuant to a separate petition presented in behalf of Luther G. Pigott and Franklin E. Michels, lessees and plaintiffs. Inasmuch as the two appeals involve the same final judgment of the circuit court and the same legal questions, they have been heard and considered together as one case in this Court.

The contention of the plaintiffs is predicated on an assertion that, under prior decisions of this Court, a convey-

ance or reservation of royalties from oil or gas will be treated in law as a conveyance or reservation of the oil and gas in place. This contention calls for a consideration of the prior decisions upon which such contention is based.

The legal principle upon which the plaintiffs rely apparently was first dealt with in *Toothman* v. *Courtney,* 62 W. Va. 167, 58 S. E. 915. In that case (62 W. Va. at page 175, 58 S. E. at page 918), the Court stated: "Though he did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it, compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place. Jarman on Wills, m. p. 741, says: 'A devise of the rents and profits or of the income of land passes the land itself both at law and in equity; a rule, it is said, founded on the feudal law, according to which the whole beneficial interest in the land consisted in the right to take rents and profits * * *.' " The rule of construction upon which such holding was based has been variously stated. "A devise of the use, income, or proceeds of land ordinarily passes the fee, but such a grant does not necessarily devise a fee and *it will not do so where an intention to the contrary appears.*" (Italics supplied.) 96 C.J.S., Wills, Section 820, page 252. "It is a general rule that a devise of the rents, profits or net profits, rents and profits, income, use, or use and possession of land constitutes a gift of the land itself. This rule is not without its limitations, however, since a devise of income, profits, etc., *may be modified by other provisions of the will * * *.*" (Italics supplied.) 57 Am. Jur., Wills, Section 1195, page 785. See also 19 Am. Jur., Estates, Section 24, page 484; *Miller* v. *Citizens National Bank,* 191 Va. 297, 60 S. E. 2d 868. It is obvious, therefore, that the legal principle upon which the holding was based in the *Toothman* case is merely a rule of construction which cannot control or override an intention to the contrary expressed in the language of the lease or other writing under consideration.

In *Paxton* v. *Benedum-Trees Oil Co.,* 80 W. Va. 187, 94 S. E. 472, the Court, citing *Toothman* v. *Courtney, supra,*

stated in the first point of the syllabus: "A grant of the royalties, rents and income arising from the production of the oil from land is a grant of the oil in such land." Similar questions have been considered in subsequent cases. *Snodgrass* v. *Koen*, 82 W. Va. 337, 96 S. E. 606; *The Manufacturers Light & Heat Co.* v. *Knapp*, 102 W. Va. 308, 135 S. E. 1; *Lockhart* v. *United Fuel Gas Co.*, 105 W. Va. 69, 141 S. E. 521; *Robinson* v. *Milam*, 125 W. Va. 218, 24 S. E. 2d 236; *Weekley* v. *Weekley*, 126 W. Va. 90, 27 S. E. 2d 591; *McIntosh* v. *Vail*, 126 W. Va. 395, 28 S. E. 2d 607; *United Carbon Co.* v. *Presley*, 126 W. Va. 636, 29 S. E. 2d 466; *Collins* v. *Stalnaker*, 131 W. Va. 543, 48 S. E. 2d 430; *Kelly* v. *Rainelle Coal Co.*, 135 W. Va. 594, 64 S. E. 2d 606. The following appears in 58 C.J.S., Mines and Minerals, Section 155 (5), page 321: "In some jurisdictions a grant or reservation of royalties, rentals, and income which may arise from the operation of land for minerals, constitutes a grant or reservation of such minerals in place." Only prior decisions of this Court are cited in the text for that proposition.

In *United Carbon Co.* v. *Presley*, 126 W. Va. 636, 639, 29 S. E. 2d 466, 467, the Court stated that a reservation of one-half of the oil and gas royalty, "without more", constitutes a reservation of one-half of such minerals in place. Judge Robert T. Donley, a distinguished former member of this Court and a member of the faculty of the College of Law, West Virginia University, in the volume entitled The Law of Coal, Oil and Gas in West Virginia and Virginia, at page 228, states: "While 'royalties' is a term used to designate the lessor's share of the oil produced under a lease, it has also long been employed as a descriptive term in connection with grant, or exception, of title to the oil in place, prior to the creation of any leasehold estate. This practice has resulted in great confusion, and some care is required in drafting deeds so as to accomplish the real intention of the parties."

The rule enunciated in *Paxton* v. *Benedum-Trees Oil Co., supra,* is but a rule of construction and the function of the Court in any situation such as that presented by the present case is to ascertain the true intent of the parties

as expressed by them in the deed, lease or other written instrument under consideration. "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *Cotiga Development Co.* v. *United Fuel Gas Co.*, 147 W. Va. 484, pt. 1 syl., 128 S. E. 2d 626. In the construction of a deed or other legal instrument, the function of a court is to ascertain the intent of the parties as expressed in the language used by them. *Hall* v. *Hartley*, 146 W. Va. 328, 119 S. E. 2d 759; *Stephenson* v. *Kuntz*, 131 W. Va. 599, 49 S. E. 2d 235; *Swope* v. *Pageton Pocahontas Coal Co.*, 129 W. Va. 813, 41 S. E. 2d 691; *Bruen* v. *Thaxton*, 126 W. Va. 330, 28 S. E. 2d 59. All rules of construction must yield to the expressed intention of the parties if that can be ascertained. *Realty Securities & Discount Co.* v. *National Rubber & Leather Co.*, 122 W. Va. 21, 7 S. E. 2d 49; 5 M. J., Deeds, Section 57, page 729. In the present case, therefore, there is no place for application of the rule enunciated in *Paxton* v. *Benedum-Trees Oil Co.*, *supra*, if it appears that the intention of the parties is clearly expressed in the language which created the oil and gas reservations now under consideration.

In order to understand the language of the reservations in this case, it is helpful to bear in mind the meaning of certain terms as they are used and understood in the oil and gas industry. "Carrying rentals" or "delay rentals" represent sums paid by the lessee to the lessor on an annual, quarterly or other basis for the privilege of postponing drilling or other operations under the lease; while a "royalty" is an agreed return paid for the oil, gas and minerals, or any of them, reduced to possession and taken from the leased premises. *Robinson* v. *Milam*, 125 W. Va. 218, 224, 24 S. E. 2d 236, 240. See also *The Koppers Coal Co.* v. *Alderson*, 125 W. Va. 747, 753, 26 S. E. 2d 226, 230. "The concept of royalty always presupposes development or production of the mineral to which it relates." *McIntosh* v. *Vail*, 126 W. Va. 355, 358, 28 S. E. 2d 95, 97. "A delay rental is in lieu of development, * * *." *Trimble* v. *Hope Natural Gas Co.*, 113 W. Va. 839, pt. 2 syl., 169 S. E. 529. A

"bonus" ordinarily signifies a lump sum paid by the lessee to the lessor as a consideration for the execution of the lease. Oil and gas leases, generally provide for free gas for a dwelling on the leased premises. 13 M. J., Mines and Minerals, Section 47, page 63. See *Kimble* v. *Wetzel Natural Gas Co.*, 134 W. Va. 761, 61 S. E. 2d 728. Both leases in the present case contain provisions for free gas. For definitions and explanations of the terms referred to immediately above, see The Law of Coal, Oil and Gas in West Virginia and Virginia, Sections 156 and 157, pages 219-220.

*Mounger* v. *Pittman*, 235 Miss. 85, 108 So. 2d 565, points out the characteristics of a nonparticipating royalty interest, as distinguished from an interest in oil and gas in place, as follows: "The distinguishing characteristics of a non-participating royalty interest are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals. Conversely, the distinguishing characteristics of an interest in minerals in place are: (1) Such interest is not free of costs of discovery and production; (2) the owner has the right to do any and all acts necessary to discover and produce oil and gas; (3) the owner has the right to grant leases, and (4) the owner has the right to receive bonuses and delay rentals."

Bearing in mind the characteristics and attributes of a mere royalty interest as contradistinguished from an interest in oil and gas in place; and bearing in mind also the meaning of the terms used, we believe the expressed intent of the parties to the deeds which created the reservations in this case becomes apparent. At the outset, we observe that the reservations in this case are more restrictive than the rather embracive language of the grant in *Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S. E. 472, which was as follows: "The 1/2 of all royalties, incomes and rentals * * *." In the instant case, the reservations embrace merely the proportionate or fractional

shares "of the oil and gas royalty." The reservations do not include the additional words, "incomes and rentals." On the contrary in each deed in the instant case the grantee, his heirs and assigns, are given the right to receive the bonuses and carrying rentals and the right to lease the land for oil and gas purposes, except that the deed from A. Colwell Davis to Kidner does not specifically give to the grantee the right to receive bonuses. The right to receive bonuses and carrying charges and the right to lease for oil and gas purposes are out of harmony with the concept of a reservation of oil and gas in place. On the contrary, such rights are normal attributes of ownership and tend to disclose an intent to convey to the several grantees the ownership of the oil and gas in place, subject only to mere royalty interests in the grantors.

We observe also that the several reservations are of fractional portions of the oil and gas royalty "when produced." In *McDonald* v. *Bennett,* 112 W. Va. 347, 164 S. E. 298, a case involving a question similar to that involved in the instant case, the Court emphasized the significance of the words, "that may be produced." See also *Harris* v. *Cobb,* 49 W. Va. 350, 355, 38 S. E. 559, 561. It is apparent from the words "when produced" that the parties were not speaking in terms of an interest in the oil and gas then in place, but rather of the royalty interest which would follow production of oil or gas, or both. If the language of the several deeds were treated as constituting a reservation of the oil and gas in place, the words "when produced" would have to be regarded as meaningless surplusage. Such a construction also would be wholly out of harmony with a grant to the several grantees, their heirs and assigns of the right to lease the land for oil and gas purposes and to receive the bonuses and carrying rentals. On the other hand, a construction which places in the grantees the ownership of the oil and gas in place, subject to mere royalty rights, renders all of the language of the reservations meaningful and purposeful.

For reasons stated, the judgment of the Circuit Court of Doddridge County is affirmed.

*Affirmed.*