STATE OF WEST VIRGINIA

**Haught Family Trust,**
**Petitioner Below, Petitioner**

**FILED**
**April 20, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 19-0368** (Ritchie County 16-C-20)

**Anna Louise Williamson,**
**Daniel Owen Williamson,**
**and Laura Williamson Groves,**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

Petitioner Haught Family Trust, by counsel Philip A. Reale II, appeals the Circuit Court of Ritchie County's March 18, 2019, order granting summary judgment to Respondents Anna Louise Williamson, Daniel Owen Williamson, and Laura Williamson Groves. Respondents, by counsel Ethan Vessels, filed a response.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Frank O. Williamson died prior to May 4, 1982, leaving Mary M. Williamson as the surviving joint tenant of the subject tract of realty that is the subject of this appeal.[1] Mary M. Williamson died prior to June 29, 1997, and devised the tract to Respondents Anna Louise Williamson, Daniel Owen Williamson, and Laura Williamson Groves. Petitioner Haught Family Trust purchased a purported mineral estate for the tract at issue in 1997 for $650 in a sale of delinquent tax liens. Following that sale, a quitclaim deed dated June 28, 1999, was recorded with the County Clerk of Ritchie County. That deed describes the real estate as follows: "½ interest in the oil, gas and minerals within and underlying 76 acres and 40 poles, situate on Hushers Run, in Clay District, Ritchie County, West Virginia."

Petitioner sued to quiet title, claiming one-half of the mineral estate of the subject 76-acre property in Ritchie County. The parties disagree as to the meaning of an oil and gas reservation in

---

[1] Petitioner set forth a detailed chain of title in its brief, and respondents agree with petitioner's "title history involving the deed and property at issue." Therefore, for the purpose of this decision with a limited legal issue, we need not delve into those intricacies.

1

a 1907 deed in the chain of title. They agree as to the title history, but not as to the meaning of the reservation contained in that deed. The relevant portion of that deed provides as follows:

> The parties of the first part except and reserve to the said Robert J. Reed, his heirs and assigns forever, one half of all the royalty of oil (which royalty shall not be less than the usual one-eighth), and one half of the proceeds of all gas *which may be produced* from said tract of land . . . .

(Emphasis added).

In its March 18, 2019, "Decision and Judgment Entry," the circuit court found that *Davis v. Hardman*, 148 W. Va. 82, 133 S.E.2d 77 (1963), controls the outcome of the parties' dispute regarding the mineral rights underlying the subject tract. According to the circuit court, *Davis* held that the rule enunciated in *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S.E. 472 (1917), is "but a rule of construction and the function of the Court in any situation such as that presented by the present case is to ascertain the true intent of the parties as expressed by them in the deed." Further, this Court found that

> [i]t is apparent from the words "when produced" that the parties were not speaking in terms of an interest in the oil and gas then in place, but rather of the royalty interest which would follow production of oil or gas, or both. If the language of the several deeds were treated as constituting a reservation of the oil and gas in place, the words "when produced" would have to be regarded as meaningless surplusage.

*Davis*, 148 W. Va. at 91, 133 S.E.2d at 82. The circuit court found that that holding was bolstered by *Kidder v. Montani Energy, LLC*, No. 16-1109, 2017 WL 5509927 (W. Va. 2017) (memorandum decision). As the circuit court explained, in *Kidder*, this Court found that

> the deed before us speaks of royalties realized once the land is "drilled" or the minerals are "produced" or "marketed." The reservation vested in A.J. and Letha Rice (and their successors) no control over the drilling or production or marketing. It is apparent that A.J. and Letha Rice wished to retain the royalty interest for any oil that the landowners allowed to be produced, as well as for any gas that the landowners allowed to be marketed for use other than their own on-premises use. The language of the 1910 deeds, on its face, is clearly intended to reserve the royalty interest only.

*Id.* at *4.

In the underlying case, the circuit court found that the 1907 reservation's inclusion of the additional words "all the gas which may be produced from said tract of land" proves that the intent of the parties was to reserve only the royalty – not the gas in place. "This intention accordingly applies to both the sale of the gas and oil, as the intention was to reserve only the royalty—i.e., the right to payments from the eventual sale of product, as opposed to the reservation of the gas or oil in place." The circuit court denied petitioner's motion for summary judgment and granted

2

respondents' motion for summary judgment by order entered on March 18, 2019. Petitioner appeals from that order.

"A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, we have held that

> "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus point 3, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

Syl. Pt. 2, *Andrews v. Antero Res.*, 241 W. Va. 796, 828 S.E.2d 858 (2019). We have additionally stated that

> "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter v. Peavy*, 192 W. Va. at 192-93, 451 S.E.2d at 758-59 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)).

*Andrews*, 241 W. Va. at 811, 828 S.E.2d at 873.

On appeal, petitioner asserts a single assignment of error: The circuit court erred in finding, as a matter of law, that the language of the reservation of oil and gas in the 1907 deed at issue was only a royalty interest and not a real property interest in the oil and gas in place despite overwhelming evidence that the parties to the deed did, in fact, intend for the reservation to be a real property interest in the oil and gas in place.

In arguing that the 1907 deed was a reservation of a real property interest in the oil and gas in place, petitioner contends that the circuit court failed to apply this Court's case law and failed to interpret the reservation applying the law in effect at the time the deed and reservation were created in 1907. Petitioner correctly asserts that a deed is to be construed as of the time of its making. Syl. Pt. 2, *Oresta v. Romano Bros., Inc.*, 137 W. Va. 633, 73 S.E.2d 622 (1952). Petitioner points to this Court's opinion in *Toothman v. Courtney*, 62 W. Va. 167, 58 S.E. 915 (1907), which held that "[i]n the exposition of deeds the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect." *Id.* at 172, 58 S.E. at 917. Petitioner argues that due to the close proximity of the *Toothman* opinion and the drafting of the 1907 deed, this Court is given a "virtual real-time analysis of how this matter would have been decided by the West Virginia Supreme Court [of Appeals] in 1907 and how it ultimately should be decided by this Honorable Court at present."

Petitioner further asserts that under current West Virginia law, the deed is ambiguous and this Court should consider extrinsic evidence to carry into effect the clear intent of the parties, which, it contends, was to reserve one-half of the oil and gas in place. It argues that there is a clear disagreement as to the meaning of the reservation so it is ambiguous. In addition to distinguishing the instant case from *Davis*, petitioner cites the syllabus of *Paxton* for the proposition that "[w]here there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee." Syl. Pt 6, *Paxton*, 80 W. Va. at 187, 94 S.E. at 472. As this Court stated in *Davis*, "[t]he rule enunciated in *Paxton* . . . is but a rule of construction and the function of the Court in any situation such as that presented by the present case is to ascertain the true intent of the parties as expressed by them *in the deed, lease or other written instrument under consideration*." 148 W.Va. at 88-89, 133 S.E.2d at 81 (emphasis added).

However, as set forth in *Davis*,

 [i]f the language of the several deeds were treated as constituting a reservation of the oil and gas in place, the words 'when produced' would have to be regarded as meaningless surplusage. Such a construction also would be wholly out of harmony with a grant to the several grantees, their heirs and assigns of the right to lease the land for oil and gas purposes and to receive the bonuses and carrying rentals. On the other hand, a construction which places in the grantees the ownership of the oil and gas in place, subject to mere royalty rights, renders all of the language of the reservations meaningful and purposeful.

*Id.* at 91, 133 S.E.2d at 82. The reservation at issue in *Davis* was executed in 1916.[2] *Id.* at 84-85, 133 S.E.2d at 78-79. The language of that deed specifically

excepted and reserved . . . one-half of the oil and gas royalty, in and under said land, when produced, being one-half of the usual one-eighth oil royalty, and one-half of the usual gas well rental from each and every gas well that may be drilled on said premises in the future . . . .

*Id.* This language is very similar to the deed language in the instant case, which reserves "one half of all the royalty of oil (which royalty shall not be less than the usual one-eighth), and one half of the proceeds of all gas which may be produced from said tract of land . . . ."

Further, petitioner argues that equity requires that respondents be precluded from claiming ownership of the subject oil and gas minerals under the doctrine of laches. It asserts that laches bars respondents from asserting that they own the rights to the subject minerals, as they forfeited or abandoned such alleged right due to a lack of diligence in pursuing a claim to those rights. Petitioner contends that it will be prejudiced if respondents' claim is allowed to proceed. It asserts that the circuit court failed to address the issue below so this Court should review the laches

---

[2] This Court addressed a similar reservation in *Kidder*, 2017 WL 5509927, at *4, wherein we found that "[t]he language of the 1910 deeds, on its face, is clearly intended to reserve the royalty interest only." The language of the *Kidder* deeds reserved "the usual royalty of one eighth of all the oil produced and saved from said land . . . ." *Id.* at *1.

argument de novo. Petitioner argues that a "mere delay" will not bar relief in equity based on laches but a delay in the assertion of a known right that works to the disadvantage of another will warrant the presumption that a party has waived his right. It points to respondents' alleged failure to pay taxes on the full mineral rights, asserting that respondents had multiple opportunities to assert a claim to the subject property despite multiple notices and opportunities to assert their property claim.

"[O]ne who seeks to assert the defense of laches must show '(1) lack of diligence by the party against who the defense is asserted, and (2) prejudice to the party asserting the defense.' *State ex rel. Smith v. Abbot,* 187 W.Va. 261, 264, 418 S.E.2d 575, 578 (1992) (citing *Mogavero v. McLucas,* 543 F.2d 1081 (4th Cir.1976))." *State, Dept. of Health v. Robert Morris N.*, 195 W. Va. 759, 762, 466 S.E.2d 827, 830 (1995). Further, this Court has held that

> "'[l]aches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.' Syllabus point 2, *Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213 (1941)." Syl. pt. 1, *State ex rel. Smith v. Abbot,* 187 W.Va. 261, 418 S.E.2d 575 (1992). *See also* syl. pt. 4, *Laurie v. Thomas,* 170 W.Va. 276, 294 S.E.2d 78 (1982).

*State ex rel. W. Va. Dep't of Health and Human Res. v. Carl Lee H.*, 196 W. Va. 369, 374, 472 S.E.2d 815, 820 (1996).

However, respondents point out that petitioner failed to assert the doctrine of laches below and further argue that "[i]t would not apply anyhow." In petitioner's brief, it simply says "[a]s briefed in the [c]ircuit [c]ourt, equitable considerations are prevalent that should be applied in deciding this matter." Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure,

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Because petitioner has failed to point this Court to the alleged briefing below

wherein the issue was allegedly raised, respondents assert that it was not raised below, and petitioner did not dispute that contention in a reply before this Court, we decline to address the merits of this issue.[3]

For the foregoing reasons, we find no error in the circuit court's March 18, 2019, summary judgment order, and it is hereby affirmed.

Affirmed.

**ISSUED:** April 20, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[3] As a general rule, "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. Pt. 7, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995) (internal quotations and citations omitted).