# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 23-ICA-351

_____

FILED

October 8, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

VENABLE ROYALTY, LTD, and
V14, LP,
Plaintiffs Below, Petitioners,

v.

EQT PRODUCTION COMPANY, ET BLUE GRASS, LLC, and
AMP IV, LP, et al.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Wetzel County
Honorable Ronald E. Wilson, Judge

No. CC-52-2021-C-19

REVERSED AND REMANDED
_____

Submitted: September 4, 2024
Filed: October 8, 2024

J. Thomas Lane, Esq.
J. Mark Adkins, Esq.
Charles R. Hughes, Esq.
Gabriele Wohl, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Petitioners

Kerri C. Sturm, Esq.
Trisha R. Hudkins, Esq.
Bernstein-Burkley, P.C.
Pittsburgh, Pennsylvania
Counsel for Respondents, AMP IV, LP

Samuel H. Simon, Esq.
Houston Harbaugh, P.C.
Pittsburgh, Pennsylvania
Counsel for Respondents,
Steven A. Snodgrass and
Nancy J. Barker

S. David Wilharm, Esq.
Rokisky, McCune, Wilharm & Blair, PLLC
Weirton, West Virginia

Christian E. Turak, Esq.
Gold, Khourey & Turak, L.C.
Moundsville, West Virginia
Counsel for Respondents,
Linda W. Nuckolls, Larry W. Wiles, Sherry D. Compher, Vicki Snodgrass Starr, Donna Grimm Hansen, Maureen Grimm Plumstead, Gail Grimm, and Bonnie Snodgrass Hayton.

JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Petitioners, Venable Royalty, LTD, and V14, LP (collectively "Petitioners") appeal the July 5, 2023, order of the Wetzel County Circuit Court, which granted Respondent Appalachian Mineral Partners IV, LP's ("AMP") Motion for Summary Judgment; Respondent Steven Snodgrass and Nancy Barker's (collectively "McGary heirs") Motion for Summary Judgment; and Respondents Linda W. Nuckolls, Larry W. Wiles, Sherry D. Compher, Vicki Snodgrass Starr, Donna Grimm Hansen, Maureen Grimm Plumstead, Gail Grimm, and Bonnie Snodgrass Hayton's (collectively "Additional McGary heirs") Motion for Summary Judgment.[1] On appeal, Petitioners argue that the circuit court erred in awarding summary judgment to all respondents herein by concluding non-participating royalty interests ("NPRI") are personal property.

In a cross-assignment of error, the McGary heirs argue that the circuit court erred in its description of the fractional percentages of the NPRI. After our review of the record, we reverse the circuit court's award of summary judgment to the respondents herein and remand the case to circuit court for further proceedings consistent with this opinion.

---

[1] EQT Production Company, ET Blue Grass, LLC, and The Tracy Living Trust, dated April 14, 1986, et al., are parties in the underlying action but have not participated in this appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1884, William McGary acquired 201 acres of land in fee simple ("parent tract"), with no oil and/or gas or other reservations included within the conveyance. In 1907, Mr. McGary and his wife conveyed the parent tract to Joseph Carpenter; however, this conveyance contained a reservation by the McGarys, wherein "one sixteenth of all the oil and one half the royalty of gas produced from the [. . .] premises[,]" were reserved "from the operation of" the deed. The parties herein agree that this reservation then vested the McGarys with a ½ or 50% NPRI in the oil and gas produced from the parent track ("McGary Interest").

In 1907, Joseph Carpenter conveyed his interest in the parent tract to brothers A.E. Riggenbach and J.W. Riggenbach, which vested the Riggenbachs with 100% of the surface and oil and gas in place. However, the Riggenbachs received only 50% of the royalty from oil and gas produced from the parent tract due to the McGary Interest.[2] Ad valorem taxes were collected by the Sheriff of Wetzel County on the McGary Interest from 1907 until 1962 (55 years). At this point, the tax payments for assessments on the McGary Interest ceased and the property taxes became delinquent. The McGary Interest was sold by the Sheriff of Wetzel County on October 21, 1963, and conveyed to J. H. Riggenbach in a tax deed dated April 1, 1965.

---

[2] The tract of land at issue ("subject tract") is a 181-acre oil and gas estate lying under 201 acres of land in Wetzel County, West Virginia. It is undisputed that 20 acres was carved out of the parent tract and is not at issue here.

On July 13, 2021, Petitioners filed the underlying complaint seeking to quiet title and a declaratory judgment relating to the ownership of the oil and gas underlying the subject tract, naming all known heirs to William McGary and his wife ("McGarys"), and all other existing parties and entities believed to have a potential interest in the land. Respondent AMP filed its answer, counterclaim and crossclaim on October 15, 2021. In its counterclaim, AMP acknowledged that the McGary Interest reserved to the McGarys a 50% interest in the royalties generated by oil and gas produced from the subject tract. However, AMP asserted that this was an interest in personal property, not real property, and could not be subject to land book tax assessments or tax sales. AMP argued that the 1965 tax sale was invalid and the interest remained vested in the McGarys and their heirs, which was eventually conveyed, in part, to AMP. The McGary heirs answered Petitioners' complaint and denied that the 1965 tax sale transferred the McGary Interest. The Additional McGary heirs answered Petitioners' complaint, and also denied Petitioners' claim to the McGary Interest.

After the close of discovery, AMP filed its motion for summary judgment asserting that NPRIs are personal property and therefore the 1965 tax sale of the McGary Interest was void. The McGary heirs also moved for summary judgment arguing that the McGary Interest, as personal property, was not divested via tax sale. The Additional McGary heirs filed a separate motion for summary judgment, making similar arguments. Conversely, Petitioners moved for summary judgment arguing that the NPRI carved out in

3

1907 was properly assessed and taxed as an interest in real property, and thus the 1965 tax sale was valid.

On July 5, 2023, the circuit court entered its order finding in favor of AMP, the McGary heirs, and the Additional McGary heirs. The court's order noted a lack of guidance from the Supreme Court of Appeals of West Virginia ("SCAWV") as to whether an NPRI in oil and gas could be assessed as real property for ad valorem tax purposes. The court decided that it could not find in favor of Petitioners, "based upon the law this court feels is the most applicable to the facts." The court explained that there are two types of assessments with respect to oil and gas, one which is real property and one which is personal property. The value of the oil and gas in place is assessed as real property. The value of the royalty received from the production of oil and gas once it is produced is personal property. The court reasoned that the value of the McGary Interest fell into the latter category and thus was improperly assessed as real property and could not serve as the basis of a sale for delinquent taxes. Accordingly, the court voided the 1965 tax deed. This appeal followed.[3]

## II.  STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

---

[3] This Court heard oral argument on September 4, 2024.

4

# III. DISCUSSION

On appeal, Petitioners argue that the circuit court erred in its July 5, 2023, order by declaring the tax deed void and ruling that NPRIs are personal property.[4] We agree.

To begin our analysis, we concur with the circuit court that there is no clear law or decision in West Virginia which clarifies whether NPRIs should be classified as real or personal property. However, it has been well settled in West Virginia that an interest in oil and gas in place is a real property interest.[5] Further, it is well established that a royalty in oil and gas that is produced, or brought to the surface, has been determined to be personal property.[6] In other words, accrued royalties are personal property. It's generally understood that a royalty walks hand in hand with pulling the minerals from the ground. "The concept

---

[4] Petitioners' notice of appeal asserts a second assignment of error; specifically, that the order clearly erred concerning the respective ownership interest from the current owners of the McGary interest. As Petitioners' brief fails to contain any assignments of error and fails to argue this point, we will not address this issue.

[5] Oil and gas in place is real estate. Syl Pt., *Manufacturers' Light & Heat Co. v. Knapp*, 102 W. Va. 308, 135 S.E. 1 (1926). *See also Boggess v. Milam*, 127 W. Va. 654, 659, 34 S.E.2d 267, 269 (1945) ([O]il and gas in place is real estate . . . .) (citing *Wilson v. Youst*, 43 W. Va. 826, 28 S.E. 781 (1897); *South Penn Oil Company v. McIntyre*, 44 W. Va. 296, 28 S.E. 922 (1898); *Preston v. White*, 57 W. Va. 278, 50 S.E. 236 (1905); and *Manufacturers' Light & Heat Co. v. Knapp*, 102 W. Va. 308, 135 S.E. 1 (1926)).

[6] Royalty in oil brought to the surface is "personal property," and as such is susceptible of partition among its co–owners. Syl Pt. 5, *Warren v. Boggs*, 83 W. Va. 89, 97 S.E. 589 (1918). When oil and gas is produced and marketed from said lands, it loses its character of real property and, as shown in the *Warren* case, assumes the quality of personal property. *McIntosh v. Vail*, 126 W. Va. 395, 401, 28 S.E.2d 607, 610 (1943).

of royalty always presupposes development or production of the mineral to which it relates." *Davis v. Hardman*, 148 W. Va. 82, 89, 133 S.E.2d 77, 81 (1963) (citing *McIntosh v. Vail*, 126 W. Va. 355, 358, 28 S.E.2d 95, 97 (1943)). "The distinction between oil and gas *in place* and oil and gas *produced* appears in *McDonald v. Bennett,*[7] [. . .], wherein the word 'produced', qualifying a reservation of oil and gas, was held not to mean oil and gas in place." *McIntosh v. Vail*, 126 W. Va. 395, 401, 28 S.E.2d 607, 610 (1943).

In regard to NPRIs or an unaccrued royalty interest, the SCAWV has previously set forth the distinguishing characteristics of an NPRI versus an interest in oil and gas in place:

> [T]he distinguishing characteristics of a non-participating royalty interest are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals. Conversely, the distinguishing characteristics of an interest in minerals in place are: (1) Such interest is not free of costs of discovery and production; (2) the owner has the right to do any and all acts necessary to discover and produce oil and gas; (3) the owner has the right to grant leases, and (4) the owner has the right to receive bonuses and delay rentals.

*Davis*, 148 W. Va. at 90, 133 S.E.2d at 81-82 (1963) (citing *Mounger v. Pittman*, 235 Miss. 85, 108 So.2d 565 (1959)). The SCAWV has also stated:

> [g]enerally, a nonparticipating royalty interest ("NPRI") describes a right to share in royalties from oil and gas drilling and production operations where the holder thereof has conveyed away all other interests in the oil and gas he or she

---

[7] *McDonald v. Bennett*, 112 W. Va. 347, 164 S.E. 298 (1932).

6

> may have had, including any possessory interest and the right
> to lease the minerals.

*Gastar Exploration, Inc. v. Contraguerro,* 239 W. Va. 305, 308, 800 S.E.2d 891, 894 (2017) (citing Benjamin Holliday, *New Oil and Old Laws: Problems in Allocation of Production to Owners of Non-Participating Royalty Interests in the Era of Horizontal Drilling*, 44 Saint Mary's L. J. 771, 799 (2013)) ("An NPRI is a nonpossessory interest, which means that the NPRI owner does not own the minerals in place but instead holds only a presently vested right to a stated fraction of production from any and all minerals produced.").

Despite setting forth the distinguishing characteristics of NPRIs and oil and gas in place, *Davis* does not decide whether NPRIs are real property or personal property. This issue has not been determined and settled in West Virginia.

Throughout the United States, two theories have been adopted regarding unaccrued royalty interests. The majority of states have held that NPRIs are a real property interest in the form of an incorporeal hereditament that immediately vests at the time of conveyance.[8] Essentially, the owner of the NPRI holds a single stick out of the proverbial bundle which immediately vests the right to receive a portion of royalties if, and when,

---

[8] *See* Andrew S. Graham, Allison J. Farrell, Lauren A. Williams, Amber M. Moore, *One Stick in the Bundle: Characterizing Nonparticipating Royalty Interests Under West Virginia Law*, 117 W. Va. L. Rev. 519, 524-526 (2014) (citing *Hanson v. Ware*, 224 Ark. 430, 274 S.W.2d 359 (1955)).

production occurs. The immediate vesting of this interest does not violate the rule against perpetuities, as holders of this interest acquire a present interest, not a future interest in the land.[9]

The minority view treats NPRIs as a personal property interest that vests upon production.[10] This approach is most notably taken by the Supreme Court of Kansas ("SCK"). In *Lathrop v. Eyestone*, the SCK stated:

> [o]n the other hand 'royalty' in its ordinary meaning is that part of oil and gas payable to the lessor by the lessee out of oil and gas actually produced and saved. It is the compensation to the lessor provided in the lease for the lessee's privilege of drilling and producing oil or gas. It does not include a perpetual interest in and to the oil and gas in place.

170 Kan. 419, 424, 227 P.2d 136, 141 (1951). "It is not uncommon to find 'royalty' shortly defined as 'a share' in production 'paid'." *Id.* "It is personal property." *Id.* The SCK

---

[9] *See Hanson v. Ware*, 224 Ark. 430, 436 274 S.W.2d 359, 362 (1955); *Conway Land, Inc. v. Terry*, 542 So.2d 362, 364-365 (Fla. 1989); *Wedel v. Am. Elec. Power Serv. Corp.*, 681 N.E.2d 1122, 1132-1134 (Ind. Ct. App. 1997); *Price v. Atlantic Ref. Co.*, 447 P.2d 509, 510 (N.M. 1968); *J.M. Huber Corp. v. Square Enters, Inc.*, 645 S.W.2d 410 (Tenn. Ct. App. 1982); *McGinnis v. McGinnis*, 391 P.2d 927, 929-930 (Wyo. 1964).

[10] Graham, Ferrell, Williams, Moore, *supra*, at 527.

reaffirmed that royalty interests are personal property in *Cosgrove v. Young*[11] and *Rucker v. DeLay.*[12] Further, the SCK in *Cosgrove* determined that production is the vesting event.[13]

However, as highlighted in *Lathrop* and *Cosgrove*, any royalty reservation which does not vest within a certain time period violates the rule against perpetuities and is void. *Cosgrove*, 230 Kan. at 714, 642 P.2d at 82 (citing *Lathrop*, 170 Kan. 419, 227 P.2d 136 (1951)). The SCK in recent years has begun moving away from *Lathrop* and *Cosgrove*. Recently, the SCK stated:

> The criticism about this court's prior vesting analysis has some merit. Thus, we decline to extend it to royalty interests reserved in the grantor. It is better to right the ship and apply the well-recognized property law principles excepting reservations from the rule against perpetuities despite any "conceptual" difficulties this may cause. But we need not determine in this case whether we should overrule our caselaw holding royalty interests created in a transferee are future interests that vest at production because that issue is not squarely before us.

*Rucker*, 295 Kan. at 836, 289 P.3d at 1173 (2012). Thus, while still regarding NPRIs as personal property, the SCK has had to take extra measures to circumvent the rule against perpetuities.

---

[11] *See* Syl Pt. 2, *Cosgrove v. Young*, 230 Kan. 705, 642 P.2d 75 (1982).

[12] The term "royalty interest" refers to a share in the production of oil and gas at severance. It is personal property and concerns the proceeds from oil and gas leases if and when there is production. Syl. Pt. 2, *Rucker v. DeLay*, 44 Kan. App.2d 268, 235 P.3d 566 (2010).

[13] *See Cosgrove,* 230 Kan. at 715, 642 P.2d at 83. *See also Rucker v. DeLay,* 295 Kan. 826, 835, 289 P.3d 1166, 1172 (2012) (*Cosgrove* is notable because it is the first time this court expressly held that production is the vesting event.).

The adoption of the real property approach, which holds the royalty interest to vest upon conveyance instead of production, prevents violation of the rule against perpetuity and prevents clouding of title. West Virginia Code § 36-1A-1 (2023) grants a ninety-year window for the nonvested property interest to either vest or terminate. Under the personal property view, this could delay the vesting of the NPRI for, potentially, up to ninety years. This is problematic as the holder of the NPRI has no control over the vesting of the right. Essentially, the holder of the NPRI would have nothing more than an interest in the uncertain. This binds the land on two fronts. First, an analysis of whether the NPRI interest has vested or will vest within the time frame would be required in every NPRI transaction. Second, this can create stagnation upon the land as the original grantor in interest may hold the land in stasis until the NPRI is deemed invalid.

Further, classifying an NPRI as personal property would affect the ability to pass clear title. West Virginia Code §§ 40-1-8-9 (2015) protects the ownership of real property by requiring recordation in the county where the property is located. If an NPRI interest was considered to be personal property it could cause lengthy litigation to determine who owned the NPRI and at what point, if any, the rule against perpetuities rendered it invalid. Classifying NPRIs as real property would help create certainty as to who owns the NPRI interest based upon the title as shown through the recorded real estate documents.

Additionally, classifying NPRIs as a real property interest bolsters certainty with the law governing these transactions. West Virginia adheres to the doctrine known as *lex loci rei sitae*, where the law of the state in which the real property is located governs any transaction affecting the real property. If NPRIs were considered real property, it is clear that West Virginia law applies when a West Virginia NPRI passes via estate administration. If found to be personal property, the NPRI would be subject to the laws of the decedent's domicile.

For these reasons, we hold that NPRIs should be classified as real property. As described in *McIntosh*, 126 W. Va. at 401, 28 S.E.2d at 610 (1943), oil and gas property loses its designation as real property and assumes the status of personal property at the point of production. While the SCAWV in *Davis* distinguished the characteristics between an NPRI and oil and gas in place, the SCAWV in *Gastar* cites that an NPRI is a presently vested right to a stated fraction of production from any and all minerals produced. Thus, it stands to reason that an NPRI, which is unaccrued, would be a vested real property interest, which converts to a personal property interest upon production.

Accordingly, we find that the circuit court erred in awarding summary judgment to respondents, and, therefore, reverse the court's July 5, 2023, order. This matter

is remanded to circuit court for entry of an order awarding summary judgment to Petitioners.[14]

As we have determined that NPRIs are real property, we must briefly address AMP's argument that treating NPRIs as real property violates West Virginia's state tax laws. We find this argument unavailing. "[T]axation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." W. Va. Const. Art. 10, § 1.; *see also In re Northview Services, Inc.*, 183 W. Va. 683, 398 S.E.2d 165 (1990) (Under State Constitution, all property, real and personal, must be taxed equally according to its value, unless property falls within tax exemption.). Thus, West Virginia requires taxation of both real and personal property unless said property falls under an enumerated exception.[15]

AMP's argument regarding West Virginia Code Chapter 11, articles 4 and 5 is irrelevant to our determination. As discussed above, an NPRI is a vested real property interest to the oil and gas in and under the land. West Virginia Code chapter 11, article 4 simply addresses how real property is to be assessed, while chapter 11, article 5 addresses

---

[14] Based upon the finding of this Court that NPRIs are real property, respondents McGary heirs' cross-assignment of error is moot.

[15] West Virginia Code § 11-3-9 enumerates the property exempt from taxation such as cemeteries, public and family libraries, property used for charitable purposes and not held or leased out for profit, etc.

how personal property is to be assessed. As an NPRI is real property, West Virginia Code § 11-4-9 requires the assessor to assess each respective estate when any person becomes the owner of the surface and another or others become the owners of minerals below. As pointed out in Petitioners' reply brief, this statute clearly contemplates that there can be various owners of various severed interests in a single tract of land, and each shall have its interest entered for taxation. An NPRI is simply that, a severed individual interest in oil and gas currently in place. Thus, as a severed interest from the surface on the subject tract of land, the NPRI must be assessed as real property in compliance with West Virginia Code § 11-4-9.

Finally, the parties during oral argument asserted that under *Orville Young, LLC v. Bonacci*, 246 W. Va. 26, 866 S.E.2d 91 (2021), a separate tax assessment is duplicative, and therefore the tax sale was void. However, *Bonacci* is distinguishable from the facts before us. In *Bonacci*, the subject parcel's surface and mineral rights were held by owners, the Bonacci brothers, who owned the *undivided* interest in the surface and the *unsevered* oil and gas estate (emphasis added). The SCAWV determined that per West Virginia Code § 11-4-9, the property could not be assessed separately as the owner of both the surface and the mineral estate cannot be taxed separately on both. In the case before us, the oil and gas estate has been severed from the surface rights. This severance creates the situation contemplated in West Virginia Code § 11-4-9, where one party owns the surface and another owns the minerals. Thus, this severance allows for separate assessments of the

13

surface and the minerals for taxation purposes. Therefore, we find the holding in *Bonacci* relies upon facts that do not exist in this matter.

## IV.  CONCLUSION

For the foregoing reasons, we adopt the view that NPRIs are real property subject to ad valorem taxation as such. Therefore, we reverse the Circuit Court of Wetzel County's order dated July 5, 2023, and remand the matter for further proceedings consistent with this opinion.

Reversed and Remanded.